# DISTRICT OF COLUMBIA *v.* McELLIGOTT.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued March 4, 1886.—Decided March 29, 1886.

A supervisor of county roads in the District of Columbia was repairing them with a force of laborers, one of whom was at work on a bank of gravel. There was evidence tending to show that he discovered that the bank was in an unsafe condition, and asked the supervisor for a man to watch it, and received assurance that such assistance would be given; and that it was not given. The laborer continued to work there for half a day, when the bank fell upon, and seriously injured him. He brought suit against the District to recover damages for the injury. On the trial it was not alleged nor proved that the supervisor was incompetent. The court, after instructing the jury that the negligence of the supervisor was one of the risks which the laborer took upon himself, and that the District was not liable unless he was incompetent, and such incompetency was known or ought to have been known to it, added further, that if the jury found that the laborer notified the supervisor of the dangerous condition of the bank, he would be relieved from the imputation of negligence during the time necessary to provide a man to watch it. *Held:*

Statement of Facts.

(1.) That the latter instruction was inconsistent with the former, and calculated to mislead the jury.

(2.) That it was the duty of the laborer, having knowledge of the dangerous condition of the bank, to exercise diligence and care in protecting himself from harm, without regard to any assurances which he might have received from the supervisor that the assistance he had asked for would be given.

*Hough* v. *Railway Company*, 100 U. S. 213, explained.

Whether the District of Columbia is, in every case, exempt from liability for the negligence of its supervisor of roads, resulting in personal injury to those who labor under his direction on public work, is not decided.

Whether a supervisor of public roads and a laborer employed under him on the roads are fellow servants, within the meaning of the general rule that the common employer is not responsible to one employé for injuries caused by the negligence of a coemployé in the same branch of service, is not decided.

The declaration in this case was as follows :

"The plaintiff sues the defendant, a corporation duly organized in pursuance of law, for money due and payable to the plaintiff by the defendant, for that the plaintiff was employed as a laborer by the defendant to do certain work for the defendant, to wit, digging gravel from a gravel-bank and loading certain carts with the same ; that the defendant well knew that in doing said work it was necessary to provide a sufficient number of men to enable those engaged as laborers on said work to observe the bank from which they were digging to prevent the untimely caving in thereof and the falling of gravel on them, and the said defendant also well knew that it was customary and necessary to have a person to watch said bank, and to give timely warning to those laboring under the same, to enable them to escape from the said bank when a portion or the whole of the same was about to fall, yet the said defendant neglected, and although requested by the plaintiff on the 12th day of June, 1878, in the District of Columbia, did not provide a sufficient number of laborers to enable this plaintiff, who was then and there employed by the defendant and laboring in its service in digging gravel from a high gravel-bank and loading the said gravel into carts, to observe the said bank, and also, although the said custom and necessity was well known to the defendant, through the negli-

gence and default of the defendant; no person at the said time and place was provided to watch the said bank and to give timely notice to the plaintiff in order that he might escape when a portion of said bank was about to fall. By reason of the premises a large portion of said gravel-bank, at the time and place aforesaid, fell upon this plaintiff, and thereby the plaintiff was thrown to the ground, his leg broken, his skull fractured, and he was permanently injured and crippled, and permanently rendered unfit for work, and was greatly bruised and injured, and incurred expense for medical attendance, to wit, the sum of $500, and was and is deprived of divers gains and profits, and was and is hindered from attending to his necessary and lawful business, to the great damage of the plaintiff in the sum of twenty thousand dollars ($20,000), and therefore he brings his suit." Plea: general issue. Judgment below for plaintiff, which was sustained in the General Term. Defendant below sued out this writ of error. The rulings of the court below and other facts which make the case are stated in the opinion of the court.

*Mr. Henry E. Davis* and *Mr. A. G. Riddle* for plaintiff in error.

*Mr. Henry Wise Garnett* and *Mr. Enoch Totten* for defendant in error.

This case is governed by the principles established in *Hough* v. *Railway Co.*, 100 U. S. 213. The rules which govern the relations of master and servant on the subject of negligence and personal injuries are the same, whether the master be a municipal or private corporation, or a natural person. *Cowley* v. *Sunderland*, 6 H. & N. 565; *Brower* v. *New York*, 3 Barb. 254; *Toledo* v. *Cone*, 41 Ohio St. 149; *Foreman* v. *Canterbury*, L. R. 6 Q. B. 214; *Grimes* v. *Keen*, 52 N. H. 330; *Brooks* v. *Somerville*, 106 Mass. 271; *Mersey Docks* v. *Gibbs*, L. R. 1 H. L. 93.

Municipal corporations, like individuals, are liable for the negligent and unskilful acts of their servants and agents, whenever those acts occasion special injury to the person or property of another. *Weightman* v. *City of Washington*, 1

Black, 39, 50; *Barnes* v. *District of Columbia*, 91 U. S. 540. In the latter case, this court, in speaking of the decisions of the New York courts on this subject, uses this language : " The struggle in the New York courts was between the dictates of that evident justice and good sense which required that the city should indemnify a sufferer for the loss arising from the acts of those doing a work under its authority and for its benefit, and the technical rule which exempted it from liability for acts of officers not under its control or appointed by it." That the defendant had legal authority to make and repair roads, and to take and use this ground for that purpose, there can be no doubt. The Commissioners of the District of Columbia succeeded to all the power and duties of the Board of Public Works over streets and roads. 16 Stat. 419; 18 Stat. 116; *Barnes* v. *District of Columbia*, above cited; 20 Stat. 102; *District of Columbia* v. *Cluss*, 103 U. S. 705.

It is equally clear that Smallwood was the supervisor of roads and was acting under the authority and for the benefit of the defendant.

Mr. JUSTICE HARLAN delivered the opinion of the court.

This is a writ of error to reverse a judgment for the sum of $3000, which a jury found as damages for personal injuries sustained by McElligott, the defendant in error, who was plaintiff below, through the alleged negligence of the District of Columbia in its conduct of certain public work on which, at the time of such injuries, he was engaged as a laborer in its employment.

It appears that one Smallwood, the supervisor of county roads, undertook the repair of a public highway by the use of material obtained from a gravel bank. McElligott and one Meacham constituted a part of the force of laborers employed for that work. The special duty assigned to Meacham was to " prepare gravel " to be hauled away, while McElligott was to fill the carts in which the gravel was transported to the place where it was to be used by the supervisor. They reached the bank between eight and nine o'clock on the morning of June 12, 1878, observing, upon their arrival, that it had been under-

mined at one side for two or three feet, and a chamber cut into it—a condition which to some extent increased the chances of the bank's falling.

The plaintiff insists that there was evidence tending to show the following facts: That while Meacham and McElligott were at work, Smallwood was giving his attention to the repairing of the public road with the material brought from the gravel bank; that between nine and ten o'clock in the morning McElligott sent word to him to provide two additional men for the work at that place, one to watch the bank and the other to aid in filling the carts; that within a very short time an answer came to the effect that the request would be complied with; that plaintiff stopped work at noon for dinner, but before doing so sent a second message, which Smallwood received, to send more men, one to watch the bank and one to assist in loading the carts; that he resumed work about one o'clock, and about a half hour after that time—no men having been sent by Smallwood—the bank fell while he was at work five or six feet from it; that the falling bank caught him, despite his efforts to escape, burying him for a time beneath the gravel, and inflicting upon him injuries of a serious and permanent character; that—to use the language of the witness Meacham—" it is not safe to stand under a bank that has been undermined;" and that, although McElligott recognized from the outset that it was dangerous for him to do his work, without some one being present whose special duty was to give timely notice of the first indications of the bank's falling, he continued to work in reliance upon Smallwood's promise to send some one to watch the bank.

The District claims that there was evidence tending to show that Smallwood did not receive a message from McElligott to send men to watch the bank or to aid in loading the carts; that the former was not in the habit of providing men to watch a gravel bank, except when it was intended to have a "fall;" that there was no such intention on the day McElligott was injured; and that neither the latter nor Meacham had any instructions to make a "fall."

The point upon which the evidence was conflicting was as

to whether Smallwood, in fact, received notice that a man was needed to watch the bank while he and Meacham were at work. McElligott states that his first message was sent by Tracey, one of the drivers of the carts, and his second by Anderson, another driver. In his examination-in-chief by the plaintiff Tracey testified that McElligott told him "to tell Smallwood to send two men out there to help load the carts, and that the other might have the opportunity to watch the bank in case of danger," and that he "delivered the message to Smallwood, at Mr. Brown's, between nine and ten o'clock, and he said that he would send men, but he did not do it until after McElligott was hurt." He testified that he told McElligott what Smallwood said; also that "it is necessary to have a man to watch the bank when people are digging under a gravel bank; the bank was undermined that morning when we went there; it is not safe to work at a bank like that without having it watched."

But upon cross-examination the same witness, being asked to state what reason was given by McElligott for wanting men to watch the bank, said: "He wanted men to load the carts; *he did not say anything to me about watching the bank;* he simply sent a message to Smallwood to send two men to help load these carts, and that was all; *he did not at any time say he wanted a man to watch the bank;* I don't recollect his sending a message by any one to Smallwood that he wanted that he should send a man to watch the bank; *I don't recollect that I heard anything said about a man to watch the bank before this accident;* I told Mr. Smallwood that Mr. McElligott said, send a couple of men to help load the carts; I found Mr. Smallwood near Brown's; I delivered the message to Mr. Mahony; Smallwood said that he would send a man or two." Upon reexamination the same witness said: "I delivered the message to Smallwood, what McElligott told me; *I do not recollect* whether what McElligott told me to tell Smallwood was to send men to watch the bank *or* load the carts; McElligott told me to tell Smallwood to send a couple of men to help load the carts; to help them out; I delivered whatever message McElligott told me to tell Smallwood, no matter what it was."

Anderson, by whom the plaintiff claims to have sent the

second message, testifies that he did inform Smallwood, in the morning, of the former's wish, that men be sent "to help load the carts and watch the bank," and that Smallwood said "all right." He did not, however, notify McElligott of what Smallwood said, because he did not himself return to the gravel bank. There was no proof that plaintiff was informed, prior to his being injured, of what, it is claimed, passed between Smallwood and Anderson. The only evidence tending to show that the plaintiff continued to work at the bank, in reliance upon Smallwood's alleged promise or assurance that he would send some one to watch it, was in the testimony of Tracey.

At the instance of the District, the court gave numerous instructions to the jury. They embodied, among others, these propositions: That it was implied in the contract between the plaintiff and the District, that the former took the risk of the dangers which ordinarily attend or are incident to the business in which he voluntarily engaged for compensation, among which was the carelessness of those in the same work or employment, with whose habits, conduct and capacity he had, in the course of his duties, an opportunity to become acquainted, and against whose neglect or incompetency he could take such precautions as his inclination or judgment suggested; that, although Smallwood was supervisor of the highways of the District, and as such employed and controlled the services of the plaintiff, the latter could not recover on account of any neglect or misconduct of the former in and about the work in which they were both engaged, unless it was shown that Smallwood was incompetent and unfit for the discharge of the duties of his position, of which the District had, or ought to have had, knowledge; that in contemplation of law the plaintiff took upon himself the risk arising from the negligence of his fellow-workmen, including Smallwood; and that, if the plaintiff, believing that the gravel-bed was in such condition as to make it dangerous for him to continue work there, without some one being appointed to watch the bank while he was so engaged, and deliberately exposed himself to the accident by which he was injured, he was guilty of contributory negligence and could not recover in this action.

To the granting of these instructions the plaintiff made no objection. The parties went to the jury agreeing, in effect, that the principles which those instructions announced should control the determination of their respective rights. We have, therefore, no occasion to consider the general question whether the District of Columbia is, in every case, exempt from liability for the negligence of its supervisor, resulting in personal injury to those who labor under his direction on public work, nor the narrower question whether Smallwood and McElligott were fellow-servants within the meaning of the general rule that the common employer is not responsible to one employé for injuries caused by the negligence of a coemployé in the same branch of service. No such questions arise upon the present hearing. We have only to deal with the assignments of error, relating to material matters not covered by the instructions which were given at the request of the defendant, without objection upon the part of the plaintiff. And those matters are to be found in the charge of the court to the jury.

After expressing its approval of the principles announced in those instructions, and referring to the precaution taken by the plaintiff to inform Smallwood of the necessity of providing some one to watch the bank while he and Meacham were engaged in the special work assigned to them, the court said to the jury:

"Now, it is said that if Mr. Smallwood still neglected, after such notice, it would still be a neglect of a fellow-servant for which no servant could ever recover any damage. But I have, for the purposes of this trial, instructed you that if the fact of the dangerous condition of that bank was communicated to Smallwood, and a request made of him to send a man there to watch it, and he gave assurance, in reply, that a man would be sent there for that purpose, the plaintiff here might labor without any imputation of any negligence on his part for such a length of time as within which that promise might be fulfilled—not to continue there and labor any longer than that, because it would be as much negligence after a reasonable period had expired after receiving this assurance, as if no assurance had been given. The law requires that he shall not needlessly expose himself to any danger, to any peril whatever.

" And if he has taken this precaution the decision [*Hough* v. *Railway Co.*, 100 U. S. 213] is to the effect that it would not be negligence for him to remain a sufficient length of time to give opportunity to have a man sent there.

" Now, this is about all that is necessary to say upon this point.

" The proposition, then, is, if the bank was in a dangerous condition, and the plaintiff sent a notice to that effect to Smallwood, and Mr. Smallwood gave, in reply, this assurance that a man would be sent there, then, until a sufficient length of time had expired within which that promise might be fulfilled, the plaintiff might remain there at his work, and if any injury happened to him by the falling of the bank during that time, the District might then be imputed with this negligence. If he remained a longer time than [that] within which the promise might be fulfilled, or if he gave no such notice at all, or no such notice was given to Smallwood, then the plaintiff is without any remedy, however serious that injury may be.

" I do not think that it makes any difference here whether Smallwood had any man he could send there or not.

" Now, the main question, therefore, is, and the one difficulty probably which the jury will have in determining anything in this case, will be as to this matter of notice. On that subject Mr. Smallwood has been examined, as also Mr. Tracey and Mr. Anderson.

" Now, the plaintiff names Tracey and Anderson as the persons by whom he sent this message, first by Tracey and then by Anderson.

" From Anderson he received no response, because Anderson did not return. He had, therefore, no assurance in reply to that message whatever, and I think, upon the whole, that he had no reason to expect any relief, unless he received assurance such as that given in the case in the Supreme Court. Beyond that I do not think that I ought to go, and I repeat that, without he received this assurance of assistance, he took the risk of the falling of the bank upon himself."

To so much of the charge as declared that, if plaintiff notified Smallwood of the dangerous condition of the bank, he

would be relieved from the imputation of negligence during such time as was sufficient for Smallwood to provide a man to watch the bank, and to so much of it as declared that the alleged notice by the plaintiff to Smallwood, and the latter's reply thereto, took the case out of the rule laid down in the instructions previously given, the District excepted in proper form.

We are of opinion that, upon the theory of the case declared in the special instructions given, the charge was erroneous. As the court, at the request of the District, instructed the jury that the negligence of Smallwood was one of the risks which the plaintiff took upon himself, and that it was not liable in this action unless he was incompetent for his position, and such incompetency was known, or ought to have been known, to the District; as it was neither alleged nor proved that he was incompetent; and as the only neglect complained of, or to which the evidence was directed, was his failure to provide a man to watch the bank after notice of the necessity therefor, it is difficult to perceive how it became important for the jury to inquire, whether McElligott continued at work longer than was reasonably sufficient for Smallwood to appoint some one to the duty of watching the bank while the plaintiff and his coemployé, Meacham, were at work. The time during which the plaintiff continued at work after giving the alleged notice, and after receiving an assurance that his request would be complied with, has no relation whatever to the only contingency in which the District, according to the special instructions, was liable, viz.: its negligence in employing as supervisor of roads one who was unfit for the place. If the principles embodied in those instructions are sound—upon which point we are not now required to express an opinion—the court would have been justified in directing a verdict for the District. The charge was inconsistent with the instructions previously given, and was calculated to mislead the jury, for it submitted to them a question which those instructions had, in effect, if not in terms, declared to be immaterial in the case.

We are also of opinion that the charge was erroneous in its statement of the grounds upon which the jury should de-

termine the particular point submitted to them. It involved a misapprehension of the decision in Hough v. Railway Co., 100 U. S. 224, where the court had occasion to consider, among other questions, that of contributory negligence by the party who sues his employer for injuries resulting from the negligence of another employé in the same general service. That was an action against a railroad company by the representatives of a locomotive engineer. The negligence there complained of, and to which, as was claimed, was to be solely attributed the death of the intestate, was that of the company's officers in assigning to the intestate, for his use, an engine which, by proper diligence on the part of such officers might have been ascertained to be defective and unsafe. One of the defects there complained of was in the cow-catcher or pilot of the engine; the other was that the whistle was insecurely fastened to the boiler. By reason of the defect in the cow-catcher, the engine was thrown from the track, whereby the whistle fastened to the boiler was displaced, and, from the opening thus made, hot water and steam issued, fatally scalding the deceased. It was admitted that the engineer had knowledge of the defect in the cow-catcher, but it was not claimed that he was aware of the insufficient fastening of the whistle, or that the defect, if any, in that respect, was of such a character that he should have become advised of it while using the engine on the road. It was proved that he had given notice to the proper officers of the company of the defect in the cow-catcher, and they promised that it should be remedied. But the court of original jurisdiction, in effect, held that knowledge on the part of the engineer of the defect in the cow-catcher was itself sufficient to defeat the action, without reference to the assurances given that the defect in it should be remedied. In considering the question whether his use of the engine with that knowledge was such negligence as prevented a recovery, so far as that defect was the efficient cause of death, the court referred to the general rule upon the subject of contributory negligence, that where a master or his representative has expressly promised to repair a defect, the servant can recover for an injury caused thereby, within such a period of time after the promise as it

would be reasonable to allow for its performance, or for an injury suffered within any period which would not preclude a rational expectation that the promise might be kept. But to avoid misapprehension arising from the broad terms in which the general rule was frequently expressed, and that its application in that particular case might be clearly understood, the court said: "We may add that it was for the jury to say whether the defect in the cow-catcher or pilot was such that none but a reckless engineer, utterly careless of his safety, could have used the engine without it being removed. If, under all the circumstances, and in view of the promises to remedy the defect, the engineer was not wanting in due care in continuing to use the engine, then the company will not be excused for the omission to supply proper machinery upon the ground of contributory negligence. That the engineer knew of the alleged defect was not, under the circumstances, and as matter of law, absolutely conclusive of want of due care on his part." That knowledge, it was held, was a fact to be considered by the jury, in connection with other facts, in determining whether the engineer exercised that caution which all the circumstances required.

These principles were not applied in the trial of the case now before us; for, in effect, the jury were instructed that, in determining the question of contributory negligence, they need only inquire whether plaintiff continued at his work longer than was reasonably sufficient to enable Smallwood to provide some one to watch the bank. If that question was solved in favor of the plaintiff, then they were at liberty, under the charge, to find that he was not guilty of contributory negligence, although they may have believed from the evidence that no man of ordinary prudence would have entered upon and continued in the work for any time, however brief, without some one being appointed to watch the bank; in other words, that if the plaintiff, in fact, relied upon the alleged promise of Smallwood, he was not chargeable with contributory negligence, although the jury may have believed that, under all the circumstances, he so acted as to show himself utterly careless of his safety. But such is not a sound exposition of the principles which regulate the

rights and obligations of employer and employé. Assuming that the District might be responsible under some circumstances for injuries resulting from the negligence of its supervisor, it certainly would not be liable if the danger which the plaintiff apprehended from the beginning was so imminent or manifest as to prevent a reasonably prudent man from risking it upon a promise or assurance by the proper authority that the cause from which the peril arose would be removed. The plaintiff had had experience in the kind of business in which he was engaged at the time of his injury. He recognized, from the beginning, the peril to which he was exposed while working at the gravel bank. There was no express undertaking, upon the part of the District, by its supervisor, that it would save him harmless as to any injury he might suffer prior to the designation of some one to watch the bank; and it was not implied in the contract between him and the District that he might needlessly or rashly expose himself to danger. On the contrary, if liability might come upon the District for the negligence of its officers controlling his services, he was under an obligation to exercise due care in protecting himself from personal harm while discharging duties out of which such liability might arise. If he failed to exercise such care; if he exposed himself to dangers that were so threatening or obvious as likely to cause injury at any moment, he would, notwithstanding any promises or assurances of the District supervisor of the character alleged, be guilty of such contributory negligence as would defeat his claim for injuries so received.

Whether, therefore, we look at the case upon the theory embodied in the instructions given at the request of the District, or as depending upon the issue as to contributory negligence upon the part of the plaintiff, the judgment must be reversed and a new trial awarded.

*Reversed.*