DAVIS ET AL., APPELLANTS, v. GRAHAM, APPELLEE.

1. CONTRIBUTORY NEGLIGENCE.
The return of an experienced miner to the shaft when an explosion was expected to occur, raises a question of contributory negligence on his part which should have been submitted to the jury.

2. SAME.
When a miner, knowing that the means of ascending and descending the shaft in which he is employed are defective and dangerous, continues in the employment after the lapse of a reasonable time for providing safe appliances, he assumes the risk incident to the use of such defective means, notwithstanding he made complaint and was promised that the defect would be remedied promptly.

3. EVIDENCE.
Where the testimony of a witness is discredited by evidence that he has made statements out of court inconsistent with his testimony, it is not competent for the purpose of sustaining him to prove that at other times he made, out of court, statements which are consistent with his testimony.

*Appeal from the District Court of Clear Creek County.*

Messrs. WELLS, MACON & FURMAN, for appellants.

Messrs. MORRISON & KOHN and Mr. C. C. POST, for appellee.

RICHMOND, P. J., delivered the opinion of the court.

On July 29, 1890, plaintiff, Graham, was in the employ of de-

fendants and was working as a miner in a certain shaft, sunk from the drift at the tunnel level of the Silver Glance lode to the depth of about ninety feet; in the course of such employment it became his duty to drill holes and place and fire cartridges of blasting powder, and to sink said shaft and to run drifts and other workings as he might be directed or expected to do.

It is alleged that defendants failed to maintain in said shaft ladders or other proper contrivances for ascent and descent; that plaintiff had to ascend and descend the said shaft by catching with his feet and hands in the cracks between the timbering of said shaft; that such means of ascent and descent were not a proper contrivance; that on the day and year aforesaid, when plaintiff was working after he had placed the cartridge in a hole drilled by him in the end of said shaft and had fired the fuse to discharge said cartridge, it became the plaintiff's duty and was an ordinary and useful incident to his employment to descend the shaft and see if water had reached said drill hole, and if so to act accordingly; and for this purpose he came down said shaft and was standing about ten feet above the drill hole and above the bottom of the shaft at a point where he was safe from the discharge of the cartridge; that while so standing holding to the cribbing, owing to the want of sufficient ladders or other support, and without negligence on his part, plaintiff fell from said point to the bottom of said shaft at the instant when the blast aforesaid was about to explode and too late to return or take any means to prevent the explosion, or remove himself beyond the effects thereof; and that while plaintiff was at the bottom of the shaft said blast exploded and injured plaintiff; his right eye was destroyed and the sight of his left eye partially destroyed, and plaintiff was wholly blind for about three weeks; the sight of his left eye has never become restored, and plaintiff received other wounds and bruises, and for a long time thereafter suffered great pain and anguish, and has thereby permanently lost the sight of his right eye and the eye itself; the sight of his

left eye has been permanently weakened, and his power to earn a living at his occupation of mining, or any other business, has been much impaired. Wherefore he claims damages in the sum of $10,000.

Defendants answer and admit that they were in the possession of the mining premises; that the plaintiff was in their employ, and that the duty of the plaintiff in such employment was substantially as in the complaint set forth. They deny that upon the occasion in the complaint mentioned it became and was the duty of the plaintiff to ascend and descend the shaft in the complaint mentioned, for any purpose whatsoever. Admit that he did descend the shaft and was injured by the explosion and confined under medical treatment for a considerable time, and further that the injury occurred to plaintiff solely by his own negligence, without fault of defendants or any of them.

The replication denies that the injuries resulted from negligent conduct or without the fault of defendants.

The cause was tried to a jury and a verdict rendered for plaintiff in the sum of $1,500. Motion for a new trial overruled, and judgment entered upon the verdict.

The plaintiff testifies that he began working for the defendants on July 29, 1889; that the accident happened on the night of August 11th, about eleven o'clock; that he had been working thirteen and one half days. After he prepared and fired the fuse he went up the cribbing and waited long enough for the explosion, and then went down to about the third line of the timbering, and in going down he looked over the cribbing, put one hand on the hanging wall and saw the fuse was all right, and as he was turning around to go back he swung his hand around to catch hold of the cribbing, but before he got his hand on the cribbing his foot slipped and he dropped to the bottom. "I saw I could not get out and I reached over to get hold of the fuse. I thought I would pull it out before it would explode, but before I got my fingers on it the hole exploded, and filled my face and eyes and both arms full of rock. It felt like sand." He

states that the cribbing was very close at this point, and that caused him to slip.   He also testifies that he had made complaint to the defendants about the ladders on the second or third day after he went to work, and that he was informed that they had no ladders and he would have to go down the cribbing ; that the cribbing on the top was peeled off and the bark decomposed.   It was slippery, all green bark and water coming from the drift.   There was a stream in the foot wall above the shaft, and the water came over the cribbing and wet it.   He said to Mike : " This is a very slippery place, a dangerous place to work in."   He replied : " We are going to put up ladders right away."   He spoke to Powell about it and he said they were going to put them in as quick as they could get them ; they had sent for the ladders.   That he spoke to Welsh about it the first day he went to work, and to Powell two or three days after.   He said : " I think there was time to put the ladders in before the accident after I had notified Powell.   They have mine ladders for sale in Georgetown.   The mine is about four miles from Georgetown.   There is a road and a trail.   Things are carried over the trail."   He further testified that he was an experienced miner, and realized that the shaft was a dangerous place to work in.   To use his own language in direct examination he says : " The exact language I used to Mr. Powell was this : ' Sam, this cribbing is bad ; this is a very dangerous place, because in getting up and down a man might fall down and break his neck if you don't put ladders in.' "   To which Powell replied that he had sent for ladders, and as soon as they come we will put them in.

We deem it unnecessary to quote further from the plaintiff's testimony.

In the course of the trial the defense introduced declarations of plaintiff shortly after the accident, to the effect that it had resulted from his own fault.   To use the language of the witness he admitted it was his own fault ; he " was just going to take hold of the fuse when it went off." To rebut this alleged admission and others, plaintiff was per-

mitted to introduce declarations of his made at other and different times for the purpose of fortifying or corroborating his testimony at the trial.

The errors assigned are :

First. The court erred in not sustaining defendants' objections to testimony offered by the plaintiff.

Second. The court erred in the instructions to the jury.

Third. The evidence showed that the plaintiff was injured solely on account of his own fault and carelessness, and the verdict is contrary to the evidence and the law.

To sum up the testimony it shows that the plaintiff was in the employ of the defendants ; that he was an experienced miner ; that he realized the dangers incident to his employment by reason of the defendants' having failed to provide the necessary means to ascend from and descend into the shaft ; that he requested that such means be provided ; and that he remained in the employ of the defendants and continued to work in the shaft descending and ascending as his employment necessitated ; that he had charged the mine and taken a position of safety before the explosion. And believing it possible that enough time had elapsed for the fuse to communicate the spark to the charge, he attempted to descend and learn why the explosion had not taken place.

In *Lord v. Pueblo S. & R. Co.*, 12 Colo. 390, the supreme court say : " The question of contributory negligence on the part of deceased seems easy of determination. He was in the employ of the defendant ; he was familiar with the premises where he was injured ; he knew the nature of the defendant's business, and that its employees were, according to their usual custom, at the time and place of the accident, engaged in switching and poling cars ; he understood that there was no definite or certain passageway to be left open at the point where he attempted to cross the tracks of the railroad. Under such circumstances, to attempt to pass between cars only twenty inches apart, loaded with his tools and out of sight of the engineer, was a most perilous undertaking ; and we must presume that he was aware of the dan-

ger when he voluntarily undertook the risk. It was broad daylight, and he was acting under no command or direction of any superior. Even if defendant's failure· to provide a safe passageway for its employees from one part of the works to another was a neglect of duty, the plaintiff knew of such neglect, and voluntarily remained in the service of the defendant without any promise on its part. to remedy the same."

It seems to us the language of the court in this particular case is applicable to the circumstances surrounding the case under discussion, with this exception, that there was in this case evidence of a promise to remedy the existing defects.

We are inclined to the opinion that the plaintiff's attempt to return to the point in the shaft where the explosion was expected to occur, raised a question of negligence on his part which the jury should have been allowed to pass upon. It is true that he thought sufficient time had elapsed, but, as an experienced miner, one who had been in the habit of working in mining shafts, who was experienced in blasting rock, it is fair to assume that he knew that danger lurked· around the charge that he had put in and that a return to it in a brief space of time would certainly subject him to the possibility of an explosion and resulting injuries. Still if this be not so, his admissions that he knew of the danger and knew that the employment was hazardous, that injuries were liable to result in the course of his service in one or more ways, and his continuation in such employment for a period of time longer than was necessary to make such employment safe, raised a question of negligence.

Appellee cites the case of *Hough v. R. R. Co.*, 100 U. S. 213, in support of his contention. The circumstances in that case are in no particular similar to those in the one at bar. It is unnecessary for us to review that authority because the supreme court has thoroughly performed that labor in the case of *The District of Columbia v. McElligott*, 117 U. S. 621. The opinion in both cases was rendered by Mr. Justice Har lan.

In the latter case Justice Harlan in reviewing the instructions of the court, which in substance were as follows: That if the jury found that the laborer notified the supervisor of the dangerous condition of the bank he would be relieved from the imputation of negligence during the time necessary to provide a man to watch it, said: " That it was the duty of the laborer having knowledge of the dangerous condition of the bank to exercise diligence and care in protecting himself from harm without regard to any assurance he might have received from the supervisor that the assistance he had asked would be given."

*The Eureka Company v. Bass*, 8 Southern Reporter, 216, presents the rule as we understand it. In that case a miner charged a hole with dynamite, lighted the fuse and left the mine. The fuse not having exploded he returned after twenty minutes; there was an explosion by which he was killed. The fuse was bad and had frequently hung fire. Six days before the accident the master had promised to get other fuse, and told the miner to do the best he could with what he had. Held, that it was error to refuse the charge that the miner assumed the risk, if knowing the danger, and that the promise to get other fuse had not been kept within a reasonable time, he still continued in the service using the defective fuse.

The court in this case instructed the jury that plaintiff to recover must show that the accident occurred from the fault or negligence of defendants in failing to provide reasonably safe and proper ladders or other means of getting up or down the shaft, and if he stood on the cribbing at a point where he was safe from the shot, and owing to the unsafe condition of the cribbing or want of ladders, fell, and found himself in front of the shot, defendants are liable, but if the plaintiff walked down the shaft and did not fall, but deliberately walked down and tried to pull out or put out the fuse, the plaintiff ought not to recover. This instruction was clearly erroneous. It does not cover the case as detailed in the evidence or the issues as made up by the pleadings, nor is there

any instruction given by the court that remedies this error. The instruction does not attempt to define the liability of the defendants, except in a general way, by saying that if the accident occurred from the fault or neglect of defendants in failing to provide reasonable, safe and proper ladders or other means of getting up or down the shaft he is entitled to recover. Such is not the law. The employment was known to him to be hazardous, and notwithstanding this knowledge he continued in the service of the defendants, and when in a safe position deliberately attempted to return to a point where the explosion was expected to take place, and in so returning fell by reason of the alleged defects mentioned, receiving the injuries for which he seeks to recover. The defendants were certainly entitled to have the facts in the case taken into consideration by the jury.

In the case of *Manufacturing Company v. Morrissey*, 40 Ohio St. 148, it was held, " That the workman's knowledge of the defects in the machine was not, under the circumstances and as a matter of law, conclusive evidence of contributory negligence on his part, but it was a fact in the case to be taken into consideration by the jury, with all the other facts and circumstances, in determining the question whether or not the workman's own negligence contributed to the accident by which he was injured." And certainly we think in this particular case the question of negligence on the part of the plaintiff should have been submitted to the jury by the instruction of the court. But this instruction practically took from their consideration the question of negligence on his part save and except, " unless the jury find from the evidence that plaintiff walked down the shaft and did not fall, but deliberately walked down and tried to pull out or put out the fuse."

It is true that the court instructed the jury that a person who voluntarily exposes himself to danger, which by the exercise of reasonable care and prudence he might have avoided, and is thereby injured, where such want of care on his part contributed to the injury in such a manner that but for his

own fault the injury would not have happened to him, he cannot recover, and that if an employee knows that the materials with which he works are defective ; that the employment in which he is engaged is dangerous, and is not induced to remain in the employment by promise on the part of his employer to remedy the defect and remove the danger, but voluntarily remains at his work after knowing of such danger or defects, he is deemed in law to have assumed the risk of such danger or defects and cannot recover for the damages received thereby.

These instructions are certainly inconsistent with the first, and it is difficult for us to determine that the jury did not regard the first and ignore the last. The inconsistency existing between the instructions was well calculated, in our judgment, to mislead the jury. Besides, it does not enlighten the jury as to the time plaintiff could remain in the employment after defendant's promise to remedy the defects. They were entitled to pass upon the question whether a reasonable time had elapsed.

In *Eureka Company v. Bass, supra,* it is said : " The employer or servant must be charged with the exercise of ordinary prudence. He is not compellable, nor is it prudent for him to remain in the service of his employer, if by so doing he subjects himself to any extraordinary hazard or peril not incident to the usual mode of conducting the business or employment. If he has notice of any defect in the appliances or instrumentalities used by him, from which injury may be reasonably apprehended, he should, generally speaking, quit the service for his own protection. Notice of the defect merely does not, however, impute to him negligence. He must have notice of the danger, which then becomes a circumstance from which negligence may be inferred, if he continues silently and without objection in the prosecution of his employment."

We now come to the discussion of the admissibility of the plaintiff's declarations subsequent to the accident in corroboration and support of his testimony at the trial, after it had

been established by the defense that he made other and different statements than those made by him while testifying.

We are willing to admit that there is a conflict of authorities upon this point, but we think that the weight of authority is decidedly against the admissibility of such statements.

" By weight of authority, where the testimony of a witness is discredited by evidence that he has made statements out of court inconsistent with his sworn testimony, it is not competent for the purpose of sustaining him to prove that, at other times, he has made, out of court, statements which are consistent with his sworn testimony." Thompson on Trials, § 573, and cases cited.

The record discloses that these statements were made sometime after the accident and after the statements testified to by witnesses on the part of the defense.

We hold that the testimony was inadmissible and for this reason, if for none other, the judgment must be reversed. But we are not content with resting our conclusions entirely upon this one proposition, as we think that the plaintiff's testimony was calculated to establish contributory negligence on his part, and that this questions was not properly presented to the jury by the instructions of the court.

The judgment must be reversed.

*Reversed.*