SOUTHERN RY. CO. v. CARR.

(Circuit Court of Appeals, Fourth Circuit. April 10, 1907.)

No. 682.

1. MASTER AND SERVANT—INJURIES TO SERVANT—RAILROADS—NEGLIGENCE OF MASTER.

Where no injury had ever occurred on account of the eaves of a house projecting slightly over a railroad track for 15 years, the eaves being of a permanent character, and not liable to become impaired by use, the railroad company was not negligent in permitting them to remain in such condition.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 224–227.]

2. SAME—ASSUMED RISK.

The eaves of a house had slightly projected over a railroad spur track for over 15 years, during which no injury had occurred. There was ample room on top of the cars for a brakeman, in the exercise of ordinary care, to pass along the running board and manipulate the brakes without incurring any danger from the eaves; but plaintiff, though knowing the condition of the eaves, took a position on top of a car with his back toward the house, in which situation he was struck by the eaves, knocked from the car, and injured. Held, that the danger was an open and visible one, which plaintiff assumed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 556.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

3. SAME—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE—ASSUMED RISK.

In an action for injuries to a servant, the court charged that, in determining whether an employé has exempted his employer from liability in any particular case because of alleged contributory negligence or assumed risk, the jury should consider the exigencies of his position and all the circumstances of the particular occasion. Held, that such instruction was objectionable for failure to explain the difference between the doctrine of contributory negligence and assumption of risk.

4. SAME—DEFECTIVE APPLIANCES—EVIDENCE.

In an action for injuries to a brakeman, proof that the brakes on a railroad car failed to work at the time plaintiff was injured was not evidence that the same were defective.

5. SAME—DUTIES OF MASTER.

The duty of a master to furnish reasonably safe appliances for servants to work with, and to use ordinary care to keep them in repair, does not make the master an insurer of the safety of the servants.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 172–174.]

6. SAME—BURDEN OF PROOF.

In an action for injuries to a servant by alleged defective appliances, the burden is on plaintiff to show that the master was negligent either in furnishing the appliances or machinery, or that he did not exercise ordinary care in repairing and inspecting them.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 882, 900–905.]

In Error to the Circuit Court of the United States for the District of South Carolina, at Greenville.

C. P. Sanders, for plaintiff in error.

Stanyarne Wilson and J. A. Sawyer, for defendant in error.

Before GOFF and PRITCHARD, Circuit Judges, and McDOWELL, District Judge.

PRITCHARD, Circuit Judge. This is an action at law brought by the defendant in error, Joseph Oliver Carr, by guardian ad litem, to recover damages for personal injuries sustained by him while in the employment of the plaintiff in error on the 12th day of December, 1903, as brakeman or flagman. As brakeman and flagman, it was his duty to stand on freight cars and control and stop the same with hand-brakes. At the time he was injured he was on the top of the cars which were being pushed into a spur track at Hickory, N. C., and was attempting to put on the brakes. Before he succeeded in so doing, the cars ran under the projecting eaves of a house which was erected near the spur track; the eaves striking defendant in error, knocking him to the ground, and injuring him. There was a verdict and judgment for the defendant in error, from which this writ of error was taken.

The testimony shows that the house standing near the side track had been constructed about 15 years before the injury occurred, the eaves of which projected over the track; that during all this time cars had been constantly shoved in on the side track, passing along by the house and under its eaves, with brakemen on the top of the cars; that no one had ever been injured there before or since the accident in question. The evidence also shows that the brakes immediately after the accident were in good order. It also appears that there was ample room on the car for one, by the exercise of ordinary care, to set the brakes without coming in contact with the overhanging eaves. The eaves projected over the top of the car about 18 inches. This defect, if any, was not latent, but patent, and easily observed. The person injured was familiar with the location of the house, track, and overhanging eaves, and while at work on top of the cars had passed along this track by the house quite a number of times. In passing along on this occasion he stood on the side of the car with his back toward the house. It was shown that he failed to look to ascertain whether he was in danger of coming in contact with the eaves of the house, notwithstanding he knew he was in close proximity to the house. While in this position, the car ran under the eaves, and he, being struck by the same, was knocked off and injured. It was shown that there was ample room for him to have stood on the car and set the brakes without coming in contact with the eaves.

It appears from the record that at the conclusion of the testimony in chief on behalf of the defendant in error, and again at the conclusion of all the testimony, the plaintiff in error moved the court to direct a verdict on the following grounds:

"(1) That there is not sufficient evidence of negligence shown on the part of the master.

"(2) That the injury which came to Mr. Carr came from one of the risks assumed by him when he entered the service of plaintiff in error.

"(3) That, if there is any evidence of negligence on the part of the master, the evidence clearly shows contributory negligence on the part of Mr. Carr."

The court below refused the motion to direct a verdict, but at the same time stated:

"I am doubtful if the plaintiff has the right to recover in this case. I am inclined to think that this injury was the result of his own negligence; but I think there is a question for the jury, and I will let it go to the jury."

The plaintiff in error excepted to the refusal of the court to direct a verdict, and also excepted to the charge of the court because it did not distinguish between the defense of assumption of risk and that of contributory negligence.

It is a well-settled rule that the master must furnish safe appliances and a reasonably safe place in which to work. The testimony shows that, if he had remained on the running board which is laid along the center of the top of the car, he would not have been injured, or, if he had taken the precaution to have stepped to the opposite side of the running board, he would have been still further removed from the point which he occupied when injured. It is true that he claims the brake was defective, and that he could not successfully operate it on that occasion, but the uncontradicted evidence shows that the brake was in good condition just immediately after the accident occurred.

John White, who was conductor of the switch engine and crew, among other things, testified as follows:

"Q. On this occasion state whether or not a brakeman could have gone through there, if he had been looking, without being struck by those eaves? A. Yes, sir; he could have gone through there without being struck.

"Q. Did you examine the brakes afterwards? A. I got my brakes stake and went up on the cars and examined them to see if they was all right.

"Q. What did you do? A. I put them on.

"Q. Did you put them on, or were they on? A. No, sir; he had them on enough to stop the car. I tried to see if they were sprung, or anything had caught so they would not turn.

"Q. Could you turn it any more? A. Yes, sir.

"Q. What was the condition below? A. Chains were all right, and brake rods all right.

"Q. How was the shoe? A. All right.

"Q. Could a man stand between the brakes and the centerboard and put on brakes, and not come in contact with that? A. Yes, sir; he could stand on that side.

"Q. After these cars were started in there, was it time enough for a man to put on both brakes there? A. Oh, yes, sir; a long time."

E. C. Klinerd, who was at the same time employed as a brakeman, testified, among other things, as follows:

"Q. Did you know anything about the condition of those brakes on those two cars? The conductor examined them?

"(Objected to by Mr. Wilson.)

"Mr. Sanders: Q. Unless you saw him—did you see him examine them? A. He called my attention to it.

"Q. Were you there when he did it? A. Yes, sir.

"Q. What was the condition of those two brakes? A. I could not see anything wrong about them. I did not try to hold them. I don't know anything about their holding.

"Q. Explain to the jury how they are operated, and what causes them to hold? A. When you wind it, it winds up on the brake. The chain winds up the brake.

"Q. And that throws a pressure against the wheel? A. Yes, sir.

"Q. On this occasion you saw nothing out of order? A. No."

Even if the brakes had been defective, there is nothing to show that the master had knowledge of such defect, and, under the circumstances, the master having furnished safe appliances, to wit, brakes that were in good condition, if the same became defective without the knowledge of the master, he could not be held responsible therefor; it appearing that he had in the first instance furnished reasonably safe appliances and had used due diligence to keep the same in a reasonably safe condition, as the evidence shows the master did on this occasion. No injury ever having occurred on account of the projecting eaves during all the time cars had been carried by this point, and the eaves being of á permanent character and not liable to become impaired by use, as in the case of machinery, it must be presumed that the master exercised reasonable care.

Labatt, in his work on Master and Servant (volume 1, § 136), states the rule as follows:

"The true doctrine applicable in this connection seems to be rather this: That the previous safe and successful operation of the instrumentality is conclusive in the master's favor, provided that it appears that he has not been derelict in regard to his duty of active inspection at reasonably sufficient intervals, and no circumstances which would have put a prudent man on inquiry has come to his knowledge."

We have carefully considered all of the evidence offered in the court below, from which it appears, as hereinbefore stated, that the party injured had been in the employment of the plaintiff in error for a considerable length of time, and was thoroughly familiar with his surroundings, and the dangers incident thereto.

In determining whether a reasonably safe place has been furnished the servant in which to work, it is necessary to ascertain the character of the danger which is sought to be avoided. For instance, if a servant is required to work in the open, where he can readily observe the conditions surrounding him, the same degree of caution is not required of the master as in cases where a servant is required to work in a place where he is not afforded the means of comprehending as fully dangers by which he may be confronted.

Thompson on Negligence (volume 4, § 3772), in discussing this phase of the question, says:

"As in other situations, this ordinary or reasonable care, by whatever term it is designated, varies according to the danger to be avoided. For example, the care required of the master, under this rule, in respect to machinery and appliances, is much less where the service required to be performed is on the surface of the earth, in open day, and its character and appliances are simple, than when the machinery used is dangerous and complicated, or the work is performed in a place or at a time when the surrounding dangers are not so obvious."

When the spur track was constructed, the eaves of the house projected over the same, and the cars had been passing thereunder almost daily for 15 years prior to the date of the accident, and no injury had occurred prior to that time, and there was ample room on top of the car for one who exercised ordinary or reasonable care to pass along so as to manipulate the brakes without incurring danger. The injured understood these arrangements perfectly well, and, even if he had not taken particular care in observing how far the eaves extended over the

car, it was not the fault of the master. It was the duty of the defendant in error to see a thing which was plain, open and patent.

It is insisted that the court below erred in granting the following request which was offered by the defendant in error. "In determining whether an employé has exempted his employer from liability, in any particular case, because of the alleged contributory negligence or assumption of risk on the part of the employé, the jury should take into consideration the exigencies of his position and all the circumstances of the particular occasion. While regarding his own safety, he should also bear in mind his duty to his employer." Kane v. Railroad Co., 128 U. S. 95, 9 Sup. Ct. 16, 32 L. Ed. 339. It is insisted by the plaintiff in error that the Kane Case, supra, is not analogous to the case at bar, and that the doctrine announced therein does not apply to the facts in this case. In that case the facts were as follows:

"It was in evidence that at midnight, in the month of February, a train of freight cars, belonging to or being operated by the defendant, left Marysville on its line of road, for the city of Baltimore. The rear car was the caboose. The third car from the caboose was an ordinary 'house car.' The fourth one was laden with lumber. The car upon which the plaintiff was required to take position while the train was in motion was about the eighth or tenth one from the caboose. His principal duty was to 'brake' the train from that car back to the caboose. When the train, moving southward, was going into York Haven, 20 miles from Marysville, the plaintiff, while passing over it for the purpose of putting down the brakes, discovered that the third car from the caboose had one step off at the end nearest the engine, and immediately called the attention of the conductor to the fact. The conductor promised to drop that car at the coal yard or junction beyond them in the direction of Baltimore, if, upon looking at his manifest, he found it did not contain perishable freight.

"When the train stopped, about 4 or 5 o'clock in the morning at Coldfelters, some miles north of the coal yard or junction, the plaintiff went to the caboose to eat his breakfast and warm himself. It was snowing, freezing, and sleeting. One of the witnesses testified that 'it was a fearful cold night, raining, and sleeting. * * * It was almost bitter cold. The rain was freezing as it fell—a regular winter's storm.' While the plaintiff was in the caboose eating his breakfast, the train moved off. He immediately started for his post, leaving behind his coat and gloves. Upon reaching the south end of the third car from the caboose, he attempted to let himself down from it in order to reach the next car ahead of him, which was the lumber car, and pass over the latter to the one on which he usually stood while the train was in motion. At the moment he let himself down from the top of the house car, he forgot that one of its steps was missing; and, before realizing the danger of his position, and without being able then to lift himself back to the top of the car, he fell below upon the railroad track and between the wheels of the moving train, causing him to lose both legs. The plaintiff testifies that if, at the moment of letting himself down from the top of the car, he had recalled the fact that one of its steps was gone, he might have pulled himself back with his hands, or have 'slid down' on the brake rod, for he had before climbed up and down by holding that rod with one hand and putting his foot against it and pulling himself up until he touched the running board."

The foregoing statement shows that the knowledge of the defect, to wit, the missing step, was brought to the attention of the conductor who in turn assured the party injured that the car would be dropped at the next station, and, in the absence of information from the conductor to the effect that he had not removed the car, the party injured was justified in assuming that the same had been dropped, and that any car that he might attempt to climb upon would be in a reasonably

safe condition. The information he had received from the conductor, taken together with the exigencies of the occasion, were sufficient to relieve the plaintiff from the charge of contributory negligence, as the court very properly held in that case.

In the case of Kane v. Railroad Co., supra, among other things, it was said:

"But it is said that the efficient, proximate cause of the injury to the plaintiff was his use of the defective appliances at the end of the car from which he fell, when he knew, and, at the moment of letting himself down from that car should not have forgotten, as he said he did, that one of its steps was missing. It is undoubtedly the law that the employé is guilty of contributory negligence, which will defeat his right to recover for injuries sustained in the course of his employment, where such injuries substantially resulted from dangers so obvious and threatening that a reasonably prudent man, under similar circumstances, would have avoided them if in his power to do so. He will be deemed, in such case, to have assumed the risks involved in such heedless exposure of himself to danger. Hough v. R. R. Co. [100 U. S. 224, 25 L. Ed. 612], Dist. of Columbia v. McElligott [117 U. S. 621, 6 Sup. Ct. 884, 29 L. Ed. 946], and Goodlett v. Louisville & Nash. R. R. Co. [122 U. S. 391, 7 Sup. Ct. 1254, 30 L. Ed. 1230], above cited; Northern Pac. R. R. Co. v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590, 29 L. Ed. 755."

In submitting the instruction hereinbefore referred to, the court failed to explain to the jury that the rule in regard to contributory negligence was different from the one which pertains to assumption of risk. These two defenses being essentially different, and not depending upon the same principles of law, the granting of this instruction was calculated to confuse the minds of the jury in determining the issues submitted for their consideration. In the case at bar the injuries sustained resulted from dangers that were so open, patent, and obvious that a reasonably prudent man, situated as the injured person was on that occasion, could have avoided the same if he had exercised ordinary care and caution. Therefore the rule announced in the Kane Case, supra, and relied upon as controlling in this case, does not apply.

Even if the brake had been defective, as contended by counsel for defendant in error, it is shown by the evidence that if he had stood on the running board, or near thereto, that he could have avoided 'all danger; but in utter disregard of dangers that were well known to him, for some unknown reason, he took a position on the car which necessarily brought him in contact with the eaves of the house, and was thereby injured. Under the circumstances it cannot be contended that his injury was in any wise due to the negligence of the plaintiff in error.

It is insisted by defendant in error that the brakes failed to work at the time he was injured. This is not evidence that the same were defective. It is true that the master is required to furnish his employés with reasonably safe appliances with which to work, and to use ordinary care in keeping the same in repair; but the rule does not go to the extent of constituting the master an insurer. If the master negligently fails to perform his duty towards his servants in providing them with reasonably safe appliances with which to work, or fails to inspect such appliances, and injury results therefrom, then he can be held liable for injuries which may be received by his servants by reason of such failure. In an action like the one at bar, the burden

is on the plaintiff to show one or the other of these facts. He must either show by competent evidence that the master was negligent in furnishing the appliances or machinery, or that he did not exercise ordinary care in repairing and inspecting the same. These facts must affirmatively appear in order to entitle the plaintiff to recover.

"The mere fact of the accident is not enough to establish negligence. There must be additional and affirmative proof of the particular negligence which caused the accident, and it must also appear that the master had opportunity of previous knowledge." 1 Bail. Mas. & Servt. § 406.

"The presumption is that the master has done his duty by furnishing safe and suitable appliances, and, when this is overcome by positive proof that the appliances were defective, the plaintiff is met by the further presumption that the master had no notice of the defect, and was not negligently ignorant of it. It is not sufficient to show that the plaintiff was injured, and that the injury resulted from a defect in the machinery; but it must go further and establish the fact that the injury happened because the master did not exercise proper care in the premises." 1 Bail. Per. Inj. Mas. & Servt. § 365.

The evidence in this case fails to show that the master was negligent in any respect. It was shown by the defendant in error that he undertook to operate the brake, but that it would not hold. Further on in his cross-examination he said, "I wound the chain up tight," which shows that the chain was not broken. Even if in attempting to set the brakes he had broken the chain, this of itself would not have constituted negligence on the part of the master. However, the uncontradicted evidence of the conductor and brakeman is to the effect that immediately after the accident the brake was found in perfect order. Under these circumstances, we do not think that there was sufficient evidence as to the negligence of the defendant company to warrant the submission of the case to the jury.

In the case of Edgens v. Mfg. Co., 69 S. C. 529, 48 S. E. 538, the court, said:

"The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employé to establish that the employer has been guilty of negligence. * * * It is not sufficient for the employé to show that the employer may have been guilty of negligence. The evidence must point to the fact that he was."

The learned judge who tried the case below was evidently impressed with the fact that there was not sufficient legal evidence to entitle the plaintiff to recover, and, in discussing this phase of the question, said:

"I am doubtful if the plaintiff has the right to recover in this case. I am inclined to think that this injury was the result of his own negligence; but I think there is a question for the jury, and I will let it go to the jury."

While there are a number of exceptions to the charge of the court, at the same time, we do not deem it necessary to consider the same, feeling, as we do, that there is not sufficient legal evidence from which the jury could infer that the injury sustained was the result of the negligence of the defendant in error.

For the reasons herein stated, the judgment of the Circuit Court is

reversed, and the case remanded to that court, with instructions to set aside the verdict, award a new trial, and to proceed thereafter in accordance with the views herein expressed.