THE CENTRAL RAILROAD AND BANKING COMPANY, plaintiff in error, *vs.* MARY J. SEARS, defendant in error.

1. Though recitals of facts in the grounds of the motion for a new trial be not sufficiently certified as true in the bill of exceptions, yet if the record shows, by the judge's indorsement on the motion, that they are "approved" by him, such approval is a sufficient verification.

2. Where the question is in respect to the fault of the husband of plain-

tiff, for whose homicide she sued, or that of the engineer, warnings of the engineer to the conductor, who was the deceased husband, in regard to his imprudence in transactions similar to that which resulted in his death, are admissible in evidence.

3. The presumption of law, that the plaintiff's husband, being an employee of the road, is without fault, arises only when he is disconnected with duties about the particular business which resulted in his hurt; if he himself was engaged in the very act which resulted in his death, no such presumption will arise, but the onus is upon the plaintiff to show either that her husband was without fault, or that the company's other employees were at fault, before the onus is shifted on the company to defend.

4. When the ordinary duties of a conductor do not include the duty to couple and uncouple cars, according to the evidence, he is outside of duty and at fault, unless there be a pressing emergency upon him to do that work; and the court should present this proposition distinctly to the jury.

5. If the conductor believed, in good faith, that such an emergency was upon him, and the jury so find, and that he had good reasons so to believe, then the mere act of coupling and uncoupling, or attempting it, will not be outside of his duty and make him to blame; but even if it should appear that he thought, and had reason to think, that the emergency was upon him, he would be at fault if he acted recklessly or imprudently; and whether he did so or not is for the jury to say, under all the facts of the transaction.

6. As the verdict seems to us against the weight of the evidence, we are less reluctant to require a third trial of this case.

Practice in the Supreme Court. Evidence. Presumptions. Master and servant. Railroads. New trial. Before Judge HALL. Spalding Superior Court. August Adjourned Term, 1876.

Mrs Sears brought suit against the Central Railroad and Banking Company for the homicide of her husdand. On the trial, the evidence for plaintiff was substantially as follows: Deceased was the conductor of a freight train on defendant's road. On the day of the accident, they arrived safely at Griffin. Deceased said he was in a hurry and pressed for time. He had to leave some cars and get his train off of the main track before the arrival of the passenger train. He had two train hands under him; both were engaged. He told one of them to continue his work, that he (deceased)

would uncouple the cars for him.  As the train backed up to the point where this was done, it was going a little faster than usual.  Deceased, standing beside the track, said to the engineer, "hold up!" and signaled for him to stop; he then went between the engine's tender and the box car next to it, and took hold of the pin to uncouple them.  The train continued to move very slowly; deceased took a few short steps forward; the bar which connects the rear brakes of the tender struck his leg; he fell forward, calling out for the engineer to "hold up!"  The brake ran up on his back, and he was dragged along some twelve or fifteen feet.  He was crushed and mutilated so that he died in an hour or two.  The engineer's duty is to watch the conductor's signals and act according to them.  Seeing him thus dragged, his son called out to the engineer to stop, which the latter then did, and deceased was taken from the track. He was an experienced, good conductor.  He contributed to his wife's support about $150 to $200 per month.  His probable length of life was twenty-three years.

The evidence for defendant differed from the above in the following material points: The conductor has general charge of the train, but it is not ordinarily a part of his duty to couple or uncouple cars; he does not couple unless in case of emergency; the train hands generally do so.  At the time of the accident the train was backing slowly towards a point where some cars were to be left; it had not reached the point.  The engineer was on the right of the engine, the fireman on the left, each watching for signals.  When deceased motioned the train down, the fireman said, "that will do," the steam was shut off, the engine reversed, and the brakes put on.  The engine was rolling by inertia.  The engineer did not know that deceased had gone between the cars; the tender hid him from view.  So doing while the train was in motion was dangerous, and especially so between the engine and the cars.  They had time enough to complete their work before the passenger train arrived; and it could have been seen coming for more than half a mile.

The other facts will be found in the opinion.

A. R. Lawton; Speer & Stewart, for plaintiff in error.

B. H. Hill & Son; R. H. Johnston, for defendant.

Jackson, Judge.

This action was brought by Mrs. Sears against the railroad company for the homicide of her husband. The jury returned a verdict in favor of the plaintiff for $8,750.00; the defendant moved for a new trial on various grounds set out in the record, the court overruled the motion, and the error assigned is in overruling it on all the grounds therein taken.

1. The first point made for our adjudication arises on a motion of the defendant in error to confine the plaintiff in error to certain grounds of the motion, on the ground that others are not verified in accordance with law. The case made by the bill of exceptions comes within the ruling in the *Thompson* case, and the motion would have to prevail if nothing more appeared in the record. 55 *Ga.*, 458; but in this case the record discloses the fact that the grounds were all approved by the presiding judge, and the approval was indorsed on the motion for a new trial. This verification is sufficient.

It is true that the approval appears at the end of the charge of the court, but it is in juxtaposition with the acknowledgement of service, and evidently embraces the correctness of the motion as well as of the charge of the court, as no service of the charge, or acknowledgment thereof, is necessary. The case will be considered on all the grounds made in the motion.

2. The first ground insisted upon is the rejection of the proof that the engineer who was running the train when the accident occurred, had warned the conductor—the deceased husband of the plaintiff—of the risk he ran in uncoupling cars in similar cases and under like circumstances. We think that this evidence should have been given to the jury. The plaintiff predicated her right of recovery upon the fault of this engineer; and it seems proper to have his warning

before the jury with the view of elucidating as well the caution of the engineer or his character therefor, as the disregard of warning, and hence the recklessness of the deceased. As a circumstance calculated to throw light upon the conduct of the two men and their character, we hold the testimony admissible.

3. Another ground of error is, that the court charged the jury that "it is incumbent on the plaintiff to show that her husband was killed, or his death caused, by the act of other employees of the company. If this is shown by evidence, then the presumption would be, that the defendant's employees were at fault, etc., etc.," and in refusing to charge that "the burthen was upon her to show that the loss of his life was caused without fault or negligence on his part."

This point has been virtually—almost exactly—ruled by this court, in the case of *The Central Railroad and Banking Company vs. Kelly*, 58th *Ga. R.*, 107. It was then held that, "the presumption of law that the plaintiff, being an employee, is without fault, arises *only* when he is wholly disconnected with duties about the particular business in which he was hurt; when he is a party engaged in the duty in discharging which he is hurt, the onus is upon him to show himself without fault. So soon as he does that, the presumption arises that the other employees, engaged with him in the duty, were at fault, or negligent, and the onus is shifted upon the company to show them without negligence; and this principle reconciles the cases decided by this court, when applied to the facts of each." See 53 *Ga.*, 488; 54 *Ib.*, 509; 56 *Ib.*, 586; *The Central Railroad and Banking Company vs. Kenney*, 58*th Ga. R.*, 485. Such is the headnote No. 5 of that case, and it is expressed as clearly as I can express it in language at my command.

So, in Kenney's case, at the same term, Judge BLECKLEY says: "After proving the fact and degree of the injury, if the plaintiff will show himself not to blame, the law then

presumes, until the contrary appears, that the company was to blame; or if he will show that the company was to blame, the law then presumes, until the contrary appears, that he was not to blame;" and this, he says, is applicable "to that class of cases in which the employee shared directly in the act which résulted in his injury."

Under these rulings, the charge was wrong, because deceased was directly concerned in the act which resulted in his death; and the onus was upon him to show himself without fault before it could be presumed that the other employees were at fault; or to show the other employees at fault, before the law would presume him to be without fault. The idea of this court is, that where an employee has nothing at all to do with the act which resulted in his injury, he would stand upon the footing of a passenger in regard to presumptions of negligence; but if he were concerned therein, then the presumption would be that he had as much to do with the accident as another also concerned; and that it would be a very violent presumption to take it for granted, without proof, that everybody else was to blame except him, when he had as much to do with the cause of the disaster as any one else.

In this case, deceased was the conductor, everybody was subject to him—engineer and all the hands—and he was engaged in the very thing that resulted in his death, to-wit: in uncoupling the cars. Therefore no presumption arose in his favor until he proved himself faultless, or others to blame for the disaster.

It is due to the learned and able judge who tried this case, to say that some of these decisions had not been rendered when this case was tried, and that in all probability he was led into error by the broad decision, not properly qualified, rendered in 54 *Ga.*, 509.

4. It is also insisted that the court erred in not charging the law in regard to the duty of the conductor in coupling and uncoupling cars, as laid down by this court when this case was here before. 53 *Ga.*, 630. It was there held "not

to be the duty of plaintiff's husband, as the conductor of defendant's train, to couple and uncouple cars, unless in case of a pressing emergency."

The court did not submit, we think, this proposition clearly and fully to the jury, though requested, in writing, to charge to that effect; and in the charge set out in the record, we find nothing equivalent thereto. As the case was sent back before affirmed, but in passing upon the judgment granting the new trial which this court then did, it held that Sears was at fault, unless there was a pressing emergency upon him to uncouple the cars, we think that this point should have been distinctly given in charge, to the same effect as is the language of this court about this case ; that is, that if the jury should find that it was not his duty, under the evidence, to couple and uncouple cars, except in case of pressing emergency, and that the evidence does not show such a case of emergency, then the deceased was outside of duty, and at fault.

5. If Sears believed, *bona fide*, that the emergency was upon him, and the testimony shall show to the jury that he did so believe, and had reason so to believe, then we think that he would not be at fault in the mere act of going outside of his ordinary duty, and in coupling and uncoupling the cars, or in trying to do so. Whether he acted carefully and prudently in doing so or not, was a question for the jury, under the facts. If they shall find that a pressing emergency, in his judgment, was upon him, and that a reasonable man had a right so to judge from the facts, in the opinion of the jury, then the jury should inquire further about his prudence or imprudence in going in when the cars were in motion, and in placing himself in a position where he could not be seen by the engineer, in giving his orders by signaling him in regard to the moving of the train. Even if a pressing emergency were upon him, it was not his duty to do a reckless or imprudent thing, especially as such act, that of coupling and uncoupling cars, was no

part of his regular duty, as appears to be proven by the witnesses.

6. The verdict seems to us, as to this court before, against the weight of the evidence; and as the case was not tried under the law, as we understand it, we are less reluctant to send it back for a third hearing, because we do not think that justice has been done.

Judgment reversed.