## CLAUDIO *v.* CORTINEZ.

### APPEAL from the District Court of San Juan.

#### No. 54.—Decided June 19, 1905.

ACCIDENTS—RISKS AND DANGERS INCIDENT TO AN EMPLOYMENT OR POSITION—INDEMNITY.—It is a principle sustained by a long line of authorities, that an employe whose ordinary occupation is that of handling machinery, or any instrument or implement connected therewith, and who has knowledge of its working and of the dangers and defects thereof, assumes the natural risks and dangers incident to such employment, and if he should sustain injury in the course of his employment he cannot recover damages from his employer.

ID.—ACCEPTING EMPLOYMENT OR POSITION.—The acceptance of a position or employment implies the assumption by the employe of all the risks and dangers incident to such employment, and therefore he will have no right to demand indemnity by reason of injuries sustained therein.

ID.—DUE CARE AND DILIGENCE NECESSARY.—The law governing the liability of employers by reason of accidents in which employes are injured only provides that those who are in the discharge of their duties at the time of the accident, and who have exercised due care and diligence, have a right of action to recover damages.

ID.—CONTRIBUTORY NEGLIGENCE—CAUSES OF ACCIDENT.—If in the discharge of his duties an employe is guilty of contributory negligence and such contributory negligence was a proximate cause of the accident wherein he is injured, he cannot recover from his employer.

ID.—It is a principle of law sanctioned by the statutory law in force, that when a plaintiff is guilty of contributory negligence in those cases wherein the exercise of due care would have avoided danger, he will not be allowed to recover for damages and losses.

ID.—DIFFERENT METHODS FOLLOWED IN THE DISCHARGE OF THE DUTIES OF A POSITION—RESPONSIBILITY OF SELECTION.—Where in the discharge of the duties of a position or employment there are different methods which an employe may follow, one of which offers security and the others not, and the employe elects to follow one of those which unnecessarily exposes him to danger, he assumes the risks of his selection with all the consequences thereof, even though other employes may follow the same method.

ID.—NEGLIGENCE OF EMPLOYER.—In those cases in which the plaintiff has not been guilty of contributory negligence and in the discharge of the duties of his position acted as a prudent person would act, he must then prove, in order to recover indemnity for damages that his employer was guilty of negligence or failed to comply with his duties either personally or through an agent or manager.

ID.—WANT OF COMPETENT PERSONNEL.—Where the demand of the plaintiff is based on the alleged negligence of the employer in failing to employ competent help for the carrying on of his business, these facts must be clearly

stated in the complaint and must be absolutely proved by means of proper evidence, the burden being on the plaintiff to prove also that he was not guilty of contributory negligence.

ID.—Employers are bound to furnish machinery in good condition and employ a sufficient number of competent operators to run the same with safety, but in those cases where the number of operators is insufficient and the employer refuses to increase the number, an employe accepting a position with full knowledge of such conditions also accepts *ipso facto* the risks thereof.

ID.—BURDEN OF PROOF.—In those cases where indemnity is asked by reason of injuries sustained in accidents occurring while an employe is in the discharge of his duties, the burden of proof is upon the plaintiff and he is required to prove his case to the satisfaction of the court, as otherwise his action cannot succeed.

The facts are stated in the opinion.

Mr. *Diaz Navarro* for appellant.

Mr. *Cayetano Coll y Cuchi* for respondent.

Mr. JUSTICE MACLEARY delivered the opinion of the court.

This is an action brought on the 7th of July, 1904, by Claudio, who is a baker, against the Union Society, a firm carrying on a bakery, for $2,000 damages on account of injuries suffered by him on the 27th of April, 1904, from the loss of his left arm in the machinery of said bakery, while at work as an employe of the respondent at its bakery in the city of San Juan.

The action is based on the provisions of the act of the 1st of March, 1902, which is found in the Revised Statutes of Porto Rico on pages 150 to 156, inclusive. The sum claimed is the maximum of the recovery allowed by that statute. (Revised Statutes, P. R., section 323.)

The facts as detailed by the witnesses may be stated fully as follows:

The witness Hermenegildo Claudio, plaintiff and appellee herein, who resides in Norzagaray street, San Juan, a baker by trade, and formerly an employe of the bakery "La Union," defendant and appellant herein, testified that he had worked for defendant more than nine years and that in the said bakery the dough is worked by means of machinery; that he lost his left arm in an accident while working in the said bakery with the kneader, a part of the machinery; that the

firm dismissed the machinist and he called the attention of Mr. Cortinez, the superintendent, to the fact that at the time least expected an accident would occur, and that the said Cortinez replied that the machine was nothing, that anyone could understand it; that he (witness) afterwards told his fellow-workmen the same thing; that nothing was done about the matter, and the machinist told him (witness) the same thing; that he said he (witness) could do nothing; that he was working and had contracted to work as baker with a salary of $40 a month; that he received direct orders from Mr. Cortinez through the foreman to work with the machine; that he is married, has a family, and that the loss of his arm renders it impossible for him to continue working at his trade. He further testified in reply to questions put by the defense that as there is no machinist the baker is compelled to act as baker and machinist; that on the day the accident occurred the foreman ordered him to take out the dough, and that as he had to attend to everything, while he was attending to some of the arms the other arms came and caught him; that the dough-machine is run by an electric motor and is put in motion by a dynamo; that in order to start the machine it is necessary to touch the dynamo; that the danger is in the dough-machine; that when a machinist is in charge of the dough-machine the bakers have nothing to do with it, they only have to stand there and feed in the dough; that it was in taking out the dough that the accident occurred, and when there is a machinist the bakers attend to that duty. Again replying to questions put by the plaintiff's counsel, the witness testified that the motor by which the machine is run stands "about as far as from here to the clock" from the machine where the accident occurred.

The witness, José Gavino Dávila, a resident of Santurce, a baker by trade, and an employe in the defendant's bakery, testified that he supposes the dough-machine which caused the accident is the same one which was used at the time when the same was run by steam; that he does not know whether the

plaintiff ever complained to Mr. Cortinez of the danger of the machine or not; that he never heard the plaintiff say anything in regard to the danger; that the day on which the accident occurred the injured party was working at the dough-machine with another man, one on each side of the machine, one to take out the dough and the other to steer the machine; that the dough-machine is about two or three meters distant from the motor which runs it; that the motor is attached to the wall about the height of a man with his arm upraised, or a little higher than the dough-machine. In reply to questions put by the defense the same witness testified that he, José Dávila, was the employe working at the machine with the plaintiff the day the accident occurred, steering the machine by means of some sort of steering-gear which he calls a bridle; that the man managing the said steering-gear cannot stop the machine when it is in motion. Further replying to questions put by the plaintiff's counsel the same witness testified that the motor was not near the steering gear, and that it would require seconds only for a man to reach the motor and stop the machine if he was in charge of the steering gear of the machine.

The witness José Negrón, resident of Puerta de Tierra, and a machinist by trade, who was formerly employed by the bakery to run the machine by steam, but who was dismissed upon the installation of the electric motor, testified that the dough-machine now in use in the said bakery is the same one used when steam was employed as the motive power, the only difference being that it is now propelled by electric power; that when the motor was installed he was retained with a salary of $10 per month; that if an experienced machinist had been in charge of the dough-mixer at the time, the accident would not have occurred, because while one man attended to both things the machine ran at full speed; that with a machinist in charge the danger in the machine is to such machinist. In reply to questions put by the defense the same witness testified that he as machinist never put his

hands in the place where the dough was being mixed, that it was not his duty to do so, but the duty of the baker; that, supposing he had been in charge of the machine, as it is now run by electric power, and the plaintiff had put his hands in amongst those crooked arms of the machine, he as machinist could not have avoided the accident; that if Hermenegildo Claudio had put his hands in the place where the dough was in order to clean the arms of the machine he could not have avoided the accident, but that at such times formerly when they were cleaning the machine he was at the throttle of the steam engine. Again replying to questions put by the plaintiff, the same witness testified that if he had been in charge of the steam-engine which used to run the machinery the baker would not have had to attend to any machinery, nor put his hands about the same, but only to wait until the dough came out and keep it from falling on the floor; that if there had been a machinist in charge of the dough-mixer and the machinery there would have been no necessity for the baker to put his hands in or about the machine. To a question put by the court the same witness testified that the machine could be stopped by means of a wheel; that there is a fly-wheel which works on a shaft, and another which works on a double cog; that all the movements of the machine are stopped by the wheel; that the arms of the same are controlled by a lever; that the arm which caught Claudio can be stopped instantly; that the whole movement of the machine can be stopped by touching an electric button; that the machine used for mixing the dough can be stopped by means of the wheel.

The witness Secundino Santana, a baker by trade, who was the foreman in charge of the bakery on the day the plaintiff met with this accident, testified that he was the one who gave orders; that it was customary to stop the machinery when the dough was emptied out, and he ordered Hermenegildo Claudio to attend to this work, and he then heard one of his fellow-workmen cry out: "It is killing him!" That

the manager, Antonio González, is the one who gives all orders; that the night on which the plaintiff was injured by the machine no one was in charge of the same; that he has seen the machine work with and without a machinist, and gives the opinion that if there had been a machinist in charge of the dough-mixer the man Claudio would not have met with the accident; that the said machine could have been stopped immediately if there had been a mechanic in charge of it. To questions put by the defense the said witness testified that it was necessary for Claudio to put his hands in where the dough was in order to empty it out; that he had to use his left hand to take out the dough, and manage the crank with his right; that there were two men at the machine, one José Dávila and the other Hermenegildo Claudio; that it was necessary for Claudio to put his hand in the machine in order to take out the dough.

The witness Jacinto Verdejo, a resident of Puerta de Tierra, and a baker by trade, who was employed by the defendant company on the night of the accident to Hermenegildo Claudio, testified that he saw the occurrence; that he has worked in the bakery three or four years but has never done the work at the machine; that the machine used to have a mechanic in charge of it, but he was dismissed upon the installation of the electric motor to take the place of the steam power; that he heard the cry of the injured man and ran to him, finding that his arm had been cut off; that the machine can be stopped instantly; that it moves with great force and velocity, and that after the power is cut off a hard object will stop its motion.

The defendant proposed as evidence an ocular inspection to be made by the court of the machine herein referred to. The court went to the bakery "La Unión."

The following is recorded as the result of the inspection:

"*The court.*—Today, the 14th of October, 1904, with the object of making an ocular inspection, the court sat in the house No. 15 Luna

street. In one of the rooms of the said house a machine was found; Mr. Jose Portilla, an expert mechanic, was also there present, and was proposed as such by the defendant to give a description of the machine in question, and he was sworn in and commenced the description of the machine, which he made in the following manner:

"*Court.*—What is this?

"*Expert.*—This is a dough-mixing machine, or kneader.

"*Court.*—Has it a patent? What system is it?

"*Expert.*—It has not the manufacturer's trade-mark. It is a machine with four arms, which are found within a receptacle in which the dough is put for kneading. In order to knead it the machine is put in motion, and it is at present with its four arms working, two on each side, which are within the said receptacle. When the dough is ready the arms are changed, both working in the same direction in order for it to throw out the dough. The arms during the time the dough is bing worked move in opposite directions, and are controlled by means of a crank or wheel which makes them work in the same direction in order to discharge the dough. There is also a crank on the right-hand side of the receptacle by which the whole receptacle can be made to move outward in order to discharge the dough. At the time the dough is being discharged it is impossible to attend to the other movements of the machine.

"*Court.*—How is the general motion cut off?

"*Expert.*—The general movement is by electricity, constituting a separate apparatus. When the electric motor runs the current is open and the machine is in general motion. In order to put the machine in motion it is necessary to turn a wheel which is placed on the righthand side of the said machine, when standing in front of the same, at a distance, forming a right angle, each side of which is 3 feet long, the distances being taken from the outside right-hand edge of the machine, and the outside edge of the wheel. There is also, for the purpose of changing the motion of the arms of the machine, a crank 18 inches from the outside edge on the right-hand side of the machine; and still another crank of the same kind on the left-hand side of the machine. The general movement may be stopped by cutting off the electric current with a manipulator. The movement of the arms may be stopped instantly by means of a friction handle which is situated at the same angle and distance of 3 feet. The dough being in the machine, the movement is started with an inverted motion of the arms on each side, and is allowed to remain thus until the dough is properly worked. In order

to take out the dough from the machine, the receptacle of the dough-machine is first turned around; then a trough is placed on the floor, the motion of the two arms is changed so that all four of them work in the same direction, and the dough falls out into the trough on the floor. During this operation the greater volume of the dough is discharged by the movement of the arms of the machine, the operator overlooking the work. In order to take out the balance of the dough left in the machine, the operator stops the same and then takes it out. In my opinion a person cannot be caught by these arms when they are working in the same direction, but only when they are moving in opposite directions.

"*Court*.—Hermenegildo Claudio being present, and placing himself in front of the dough machine in the same position in which he was standing when he lost his arm, explained the accident as follows:

"That the machine was in motion, the arms working in opposite directions. That his right hand was occupied in turning the machine, with a view to stopping the arms to take out the last dough remaining, and on attempting to stop it, before he knew it his left hand was caught; the hand caught was the one with which he had been extracting the dough; that he then turned loose the right hand from where he had it, and braced it against one edge of the machine held on so until the machine tore up his hand; that he knows nothing more because he became unconscious."

On this statement of facts a judgment was rendered in favor of the plaintiff on the 14th day of October, 1904, for $400 and all costs of the suit, from which judgment the defendant in proper form and due time took an appeal to this court. The transcript was filed in this court on the 7th day of November, 1904, and heard on the 7th day of February following:

The law governing this case under the facts herein stated may be summarized as follows:

The liability of employers for injuries sustained by their employes while in their service, is regulated in Porto Rico by statute. This act was passed on the 1st of March, 1902. (Rev. Stat., secs. 322-333, pp. 150-156.)

An employe, who is himself in the exercise of due care

and diligence at the time of his injury, may maintain an action by reason of

1st. Defects in machinery and the like.

2d. Negligence of the superintendent.

3d. Negligence of a switchman, engine, driver, or conductor upon a railroad. (See sec. 322, pp. 150-151., Rev. Stat. P. R.)

In assessing damages the courts are required to consider the following points:

1st. The degree of culpability of the employer or superintendent.

2d. Sums expended by the employe for

(a) Medical attendance.

(b) Drugs, medicines and similar necessary expenses.

3d. Loss of wages while recovering from injury.

4th. Permanent impairment of earning capacity.

5th. Temporary disability to earn wages. (See sec. 323, pp. 151-152, Rev. Stat., P. R.)

Damages to be recovered by the injured employe are limited to $2,000. (Sec. 323, p. 151, Rev. Stat., P. R.)

It is also provided that no recovery can be had in case of defects in machinery or negligence of employer or superintendent, where the employe knew of the defect or the negligence and failed to give notice thereof to the employer or the superintendent. (Sec. 329, p. 155, Rev. Stat., P. R.)

It is also provided that this act shall not apply to injuries caused to domestic servants or farm laborers by fellow employes. (Sec. 331, p. 155, Rev. Stat., P. R.)

These provisions of the statute law of this Island are in accordance with the general doctrine laid down in the decisions of the American courts, which will be examined to illustrate and elaborate the priniciples here set out. (See Cooley on Torts, Chaps. XVIII and XXI, pp. 622, 634, 667, 791, 793, 797, 804, 810, 812 and 816, for a discussion of the principles upon which the Porto Rican statute is based.)

The first question which may be considered in this connection is in regard to the risks which an employe assumes when entering upon his employment. In the case of an employe whose ordinary and usual occupation is the running or management of machinery, or some implement in or about it, and who is shown to have had knowledge of the working of the machinery, its dangers and defects, it is beyond question the rule, sanctioned by a long line of authorities, that the employe takes upon himself the usual perils and risks incident to the employment, and that if injured in the course thereof he can not look to his employer for compensation. (Tuttle v. Detroit 5 H. & M. Ry. Co., 122 U. S., 195 and 196; Foley v. California Horshoe Company, 115 California, 190; District of Columbia v. McElligott, 117 U. S., 633.)

The evidence herein shows that Claudio, the plaintiff, had been in the employ of the defendant bakery company for over nine years, and that it was his duty, in connection with another employe, to attend to the working of a kneading-machine; that sometime previous to the accident (the evidence does not show how long) a change was made in the motive power from a steam-engine to an electric motor, and at the same time, or shortly afterwards, José Negrón, the machinist in charge of the steam-engine, had been discharged, it not being considered necessary to have a machinist in charge of the electric motor. It also appears that Claudio, the plaintiff, complained to Cortinez, the superintendent, stating it to be a fact that at the time least expected an accident would occur; and Cortinez, replied that the machine was nothing; that is to say, very simple, that anyone could understand it; that Claudio afterwards told his fellow-workmen the same thing, but that nothing was done in the matter.

However, the plaintiff continued in the service of the company, discharging his duties as usual, and in connection with José Gavino Dávila, attending to the kneading-machine, until the day of the accident; the dates are not definitely fixed by the testimony.

Under these circumstances, in view of the principle of law applicable to this case, it must be held that the plaintiff assumed the risks which he would naturally incur in the use and management of the kneading-machine after the motive power was changed from steam to electricity, and the machinist in charge of the engine discharged. If he had not intended to assume such risks it was his duty, on making complaint of the danger, and finding the same overruled by the authorities of the company, then and there to have retired from its employment. By continuing in its employment, he tacitly acquiesced in the decision of the superintendent that a machinist was unnecessary, and that anyone could attend to the motor, and thereby assumed all risks attendant upon this arrangement of the employes.

In support of this proposition the following decisions of the various courts may be relied on. (*District of Columbia v. McElligot,* 117 U. S., 633; *Bunt v. Sierra Butte Gold Mining Co.,* U. S., 483; *Patton v. Tex. & Pac. Ry. Co.,* 179 U. S., 663, 664; *Washington & Georgetown R. R. Co.* v. *McDade,* 135, U. S., 570.)

In this case the plaintiff knew of the use of the electric motor and of the absence of the engineer, and that he was required to start and stop it, and at the same time manage and feed the kneader. He himself states that he considered this dangerous, and called the attention of the superintendent thereto, who said there was no danger, and by continuing in the service and performing the duties which he considered dangerous, he must be held to have assumed all the risks incident to such employment. Accepting the risks of such exposure he cannot recover for an injury resulting therefrom. (*Chicago Mil. & St. Paul Rwy. Co.* v. *Ross,* 112 U. S., 382, 383; *Kohn* v. *McNulta,* 147 U. S., 238.)

But aside from this phase of the case under consideration, attention may be directed to the fact that the statute defining the liability of employers for injuries sustained by their employes, in force in Porto Rico since the 1st of March, 1902,

only gives an action to such employes as are themselves in the exercise of due care and diligence at the time of their injury. In other words, if the plaintiff, in the discharge of his duties and the management of the machinery which he was engaged in running, was himself guilty of contributory negligence or carelessness, and such carelessness was one of the proximate causes of the accident by which he was injured, he cannot recover against his employer. It is well settled both under our statutes and the general principles of law set out in the decisions of the courts, that contributory negligence on the part of the plaintiff, where by the use of proper care he might have avoided the injury, bars him from the recovery of damages. Should there be several methods, or more than one of performing the duty, and some of them are safe and others not, and he chooses one which unnecessarily exposes him to danger, he takes the risk of his choice, although others may have done the same. (*Southern Pac. Co.* v. *Seley,* 152 U. S., 156; *Kroy* v. *Chicago R. D. & P. R. Co.,* 37 Ia., 357; *Chicago & N. W. R. R. Co.* v. *Bliss,* 6 Ill., 41.)

But where the plaintiff can show himself to be free from all contributory carelessness, and that, although he has assumed the risk of the dangerous machinery he has conducted himself as a prudent man under like circumstances would act, it is necessary that he should further show by evidence that his employer has been guilty of some negligence of breach of duty, either acting in person, or through an agent, superintendent, or foreman, representing the employer.

The negligence of the employer in this case seems to be, as alleged in the complaint, that he failed to employ a machinist to manage the electric motor, and imposed that duty upon the bakers who at the same time had charge of the kneading machine. It is well settled that where the negligence of the employer in failing to employ competent servants or an adequate force to conduct his business, is alleged as the basis of the plaintiff's claim, these facts must be distinctly alleged in his complaint, and the burden of proof is on

him to show that his allegations of negligence on the part of the defendant are substantiated by proof, as well as to negative contributory carelessness on his own part. Reference may be made in support of this proposition to the following cases: *Hough* v. *Texas & Pacific R. R. Co.,* 100 U. S., 213; *B. & H. R. Co.* v. *Whittington,* 30 Grat., 805; *Central E. & B. Co.* v. *Sears,* 59 Ga., 436; *Central R. & B. Co.* v. *Kelley,* 58 Ga., 107; *Mad River R. R. Co.* v. *Barber,* 5 Ohio St., 541-568; *Ill. Central R. R. Co.* v. *Koup,* 32 Ill., 235; *May* v. *Ill. Central Co.,* 40 Ia., 341; *Blake* v. *Me. Central R. R. Co.,* 70 Me., 60.)

Certainly the employer is clearly required to use due care not only in providing proper machinery, but also a sufficient force of competent servants to safely manage the same. Still should an insufficient force of competent servants be employed the employer declining to increase the number of operatives, the employe who continues in his place with a knowledge of such insufficiency, accepts the risk thereby created.

According to all the rules of practice in any court, under the Spanish or the American systems, the plaintiff has the burden of proof, and must make out his case to the satisfaction of the court or the jury, as the case may be, and failing so to do cannot claim a judgment in his favor. (*Patton* v. *Tx. & Pac. Rwy. Co.,* 179 U. S., 663.)

Then, according to any view which we may take of this case, giving the plaintiff the full benefit of all the allegations in his complaint, and all the proof introduced on the trial of the cause in the district court, it does not appear that he is entitled to recover any damages whatever from the defendant.

For these reasons the judgment of the district court should be reversed, and judgment here rendered in favor of the appellant in accordance with the principles of law enunciated in this opinion.

*Reversed.*

Chief Justice Quiñones, and Justices Hernández, Figueras and Wolf concurred.