## CLAUDIO v. CORTINES.

## APELACIÓN procedente de la Corte de Distrito de

## San Juan.

No. 54. Resuelto en Junio 19, 1905.

ACCIDENTES DEL TRABAJO.—RIESGOS Y PELIGROS PROPIOS DE UN EMPLEO Ó CARGO.—INDEMNIZACIÓN.—Es regla sancionada por una larga serie de autoridades, que un empleado, cuya ocupación ordinaria es la de manejar maquinarias, ó algún instrumento ó herramienta relacionado con las mismas y que tiene conocimiento de su modo de funcionar y de los peligros y defectos propios de los mismos, asume los peligros naturales y riesgos incidentales á su empleo, y si resulta lesionado en el curso del mismo, no puede reclamar indemnización de su patrono.

ID.—ACEPTACIÓN DE UN CARGO Ó EMPLEO.—La aceptación de un cargo ó empleo, implica que el aceptante asume todos los riesgos y peligros incidentales á dicho empleo, y por consiguiente la falta de derecho para reclamar indemnización por una lesión que resulte de los mismos.

ID.—DEBIDO CUIDADO Y DILIGENCIA NECESARIA PARA TENER ACCIÓN.—La ley que regula la responsabilidad de los patronos por accidentes que sufran los empleados á su servicio, solo da acción á aquellos que en el ejercicio de sus deberes, y al tiempo de ocurrir el accidente, hubieren ejercido debido cuidado y diligencia.

ID.—NEGLIGENCIA CONTRIBUYENTE.—CAUSAS DEL ACCIDENTE.—Si en el desempeño de sus deberes el empleado fuere culpable de negligencia contribuyente, y ésta fué una de las causas inmediatas del accidente, que motivara su lesión, no puede reclamar indemnización de su patrono.

ID.—Es un principio de derecho, sancionado por la ley vigente, que cuando el demandante es culpable de negligencia contribuyente, en aquellos casos en que el ejercicio del cuidado necesario hubiera podido evitar un peligro, queda incapacitado para reclamar daños y perjuicios.

ID.—DISTINTOS PROCEDIMIENTOS PARA EL DESEMPEÑO DE UN CARGO.—RESPONSABILIDAD DE LA ELECCIÓN.—Si en el desempeño de un cargo ó empleo pudiera el empleado seguir distintos procedimientos, de los cuales unos ofrecieran seguridad y otros no, y escogiera alguno que innecesariamente le expusiera á algún peligro, dicho empleado asume el riesgo de su elección, con todas sus consecuencias, aún cuando otros hubieran usado del mismo procedimiento.

ID.—NEGLIGENCIA DEL PATRONO.—En aquellos casos en que el demandante no fuere culpable de negligencia contribuyente, y en el desempeño de su cargo hubiera procedido en la forma que lo hubiera hecho una persona prudente, deberá entonces probar, para tener derecho á indemnización, que su patrono ha sido culpable de negligencia, ó incumplimiento de sus deberes, ya procediendo personalmente, ó por conducto de algún agente ó administrador.

ID.—FALTA DE PERSONAL COMPETENTE.—Si la reclamación del actor se fundase en la negligencia del patrono al no emplear personal competente y adecuado para la administración de sus negocios, estos hechos deberán exponerse claramente en la demanda, y quedar perfectamente establecidos por medio de las

correspondientes pruebas, incumbiéndole, también, al demandante, probar la falta de negligencia contribuyente por parte de él.

ID.—Los patronos están obligados á suministrar máquinas en buenas condiciones y á emplear el suficiente número de operarios competentes para manejar las mismas con toda seguridad, pero en aquellos casos en que el número de operarios fuere deficiente, y el patrono se negare á aumentar el número de ellos, el empleado que acepte el puesto, teniendo conocimiento de tal deficiencia, acepta también *ipso facto*, los riesgos que resulten de la misma.

ID.—PESO DE LA PRUEBA.—En los casos de indemnización por accidentes del trabajo, el demandante tiene el peso de la prueba, y está obligado á probar su caso á satisfacción del Tribunal, pues de lo contrario su reclamación no podrá prosperar.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Díaz Navarro.*

Abogado del apelado: *Sr. Coll Cuchí* (Cayetano).

EL JUEZ ASOCIADO SR. MACLEARY, emitió la opinión del Tribunal.

La presente es una demanda entablada el 7 de Julio de 1904 por Claudio, un panadero, contra la sociedad "La Unión", que tiene una panadería, reclamando ($2,000) dos mil pesos por daños y perjuicios sufridos por él en 27 de Abril de 1904, con motivo de la pérdida del brazo izquierdo, causada por la maquinaria de dicha panadería, mientras estaba trabajando como empleado de la sociedad demandada, en su panadería de la Ciudad de San Juan.

Dicha demanda se funda en las disposiciones de la ley de 1o. de Marzo de 1902, que se encuentra en los Estatutos revisados de Puerto Rico, en las páginas 162 hasta el 167 inclusives. La suma reclamada es el máximun de la que dicha ley permite recobrar. Estatutos Revisados de Puerto Rico, sección 323.

Los hechos, según han sido declarados por los testigos, podrán relatarse perfectamente como siguen:

El testigo Hermenegildo Claudio, demandante y apelado en la presente causa, domiciliado en la calle Norzagaray, de San Juan, de oficio panadero, y anteriormente oficial de la panadería "La Unión", demandada y apelante en esta causa, declaró haber trabajado para la sociedad demandada, durante más de nueve años, y que en dicha

panadería se elabora la masa por medio de máquinas; que perdió el brazo izquierdo por un accidente, mientras estaba trabajando en dicha panadería con la amasadora que forma parte de dichas máquinas; que la casa despidió al maquinista, y que él le llamó la atención al Gerente, Sr. Cortínez, de que el día menos pensado, sucedería una desgracia, y que dicho Cortinez le contestó que eso no era nada, que cualquiera entendía la máquina; que el declarante después dijo lo mismo á sus compañeros; que no se hizo nada en el asunto, y que el maquinista le dijo al declarante la misma cosa; que él dijo que él (el declarante) no podía hacer nada; que él estaba trabajando y se había comprometido á trabajar, como panadero, con un sueldo de cuarenta dollars al mes; que él recibió órdenes directas del Sr. Cortínez, por conducto del maestro del taller, para trabajar con la máquina; que él es casado y tiene familia; y que la pérdida de su brazo le imposibilita el continuar trabajando en su oficio. Además declaró, en contestación á las preguntas que le dirigiera la defensa, que por no haber maquinista el panadero está obligado á hacer de panadero y maquinista; que el día en que ocurrió el accidente, el maestro del taller le ordenó que sacara la masa, y como tenía que atender á todo, mientras estaba atendiendo á algunos de los brazos, vinieron los otros brazos y lo cogieron; que la máquina amasadora está movida por un motor eléctrico, y se pone en movimiento por medio de un dinamo; que para poner en movimiento la máquina, es necesario tocar el dinamo; que el peligro está en la máquina amasadora; que cuando un maquinista está al cuidado de dicha máquina, los panaderos no tienen nada que hacer con la misma; ellos solamente tienen que estar allí para sacar la masa de la citada máquina; que al sacar la masa fué que le ocurrió el accidente, y que cuando hay maquinista, los panaderos atienden á su deber. Contestando nuevamente á preguntas hechas por su abogado, el testigo declaró que el motor, por el cual se echa á andar la má-

quina se halla distante de la máquina donde ocurrió el accidente, "más ó menos como de aquí al reloj."

El testigo José Gavino Dávila, vecino de Santurce, de oficio panadero, y empleado de la panadería de la sociedad demandada, declaró que suponía que la máquina amasadora que causó el accidente, fuese la misma que se usó en la época en que estaba movida por vapor; que no sabe si el demandante se quejó jamás al Sr. Cortínez del peligro de la máquina; que nunca oyó que el demandante dijera nada con respecto al peligro; que el día que ocurrió el accidente, el lesionado estaba trabajando en la máquina amasadora junto con otro, hallándose uno en cada lado de la máquina, el uno para sacar la masa, y el otro, para darle vuelta á la amasadora; que ésta se halla á una distancia de más ó menos dos ó tres metros del motor que la mueve; que el motor está en la pared, más ó menos á la altura de un hombre con el brazo extendido, ó sea un poco más alto que la amasadora. En contestación á preguntas de la defensa, el mismo testigo declaró que él, José Dávila, era el oficial que trabajó en la máquina con el demandante, el día en que ocurrió el accidente, dirigiendo la máquina por medio de una especie de palanca que él llama freno; que la persona que maneja dicho freno no puede parar la máquina cuando ésta se halla en movimiento. Contestando además á preguntas hechas por el abogado del demandante, el mismo testigo declaró que el motor no se hallaba cerca del freno, pero que una persona, para llegar al motor y parar la máquina, tardaría segundos solamente, si estuviera al cuidado del freno de la máquina.

El testigo José Negrón, vecino de Puerta de Tierra, y de oficio maquinista, que anteriormente había sido empleado de la panadería para manejar la máquina por medio de vapor, pero que había sido despedido con motivo de la instalación del motor eléctrico, declaró que la máquina amasadora actualmente usada en dicha panadería, es la misma que fué usada cuando se empleaba el vapor co-

mo fuerza motriz, con la única diferencia de que ahora
está movida por fuerza eléctrica; que cuando se instaló el
motor, se le retuvo con un sueldo de diez dollars por mes;
que si al ocurrir la desgracia, hubiera habido un perito
maquinista al cuidado de la máquina amasadora, el acci-
dente no hubiera ocurrido, porque mientras un sólo hom-
bre atendía á ambas cosas, la máquina andaba con toda
velocidad; que cuando hay un maquinista al cuidado de
la máquina, es éste el que corre el peligro. En contesta-
ción á preguntas hechas por la defensa, el mismo testigo
declaró, que él como maquinista, nunca metió las manos
en el sitio donde está la masa de pan; que no era su deber
hacer esto y sí del panadero; que, suponiendo que él hubie-
se estado al cuidado de la máquina, manejándola tal cuál
está hoy, por un motor eléctrico, y que el demandante hu-
biese metido sus manos entre los brazos torcidos de la
máquina, él, como maquinista, no hubiera podido evitar
el accidente; que si Hermenegildo Claudio hubiera meti-
do sus manos en el sitio en donde se hallaba el amasijo,
para limpiar los brazos de la máquina, él no hubiera podi-
do evitar el accidente; pero que anteriormente, en tales
ocasiones, cuando estaban limpiando la máquina, él esta-
ba al cuidado del freno y del vapor. Contestando nueva-
mente á preguntas del demandante, el mismo testigo de-
claró que si él hubiera estado al cuidado de la máquina de
vapor que solía mover la maquinaria, el panadero no hu-
biese tenido que atender á máquina alguna, ni que an-
dar con sus manos en la misma, sino que hubiese tenido
que esperar solamente hasta que saliese la masa é impedir
que cayera en el suelo; que si hubiera habido un maqui-
nista al cuidado de la amasadora y de la maquinaria, no
hubiese habido necesidad de que el panadero metiera las
manos en la máquina. A preguntas del Juez, el mismo tes-
tigo declaró que la máquina podía pararse por medio de
una rueda; que hay una rueda que trabaja volante, y otra
que trabaja en doble engrane; que todo el movimiento de

la máquina se para por la rueda, y que los brazos se cambian por medio de una palanqueta; que el brazo que cogió á Claudio, puede pararse de golpe; que todo el movimiento de la máquina puede pararse, tocando un botón eléctrico; que puede pararse la máquina amasadora por medio de la rueda.

El testigo Secundino Santana, que es panadero de oficio, y que era el maestro encargado de la panadería el día en que le ocurrió la desgracia al demandante, declaró que él era quien daba órdenes; que tenían la costumbre de parar la máquina al tiempo de vaciar la masa, y que mandó á Hermenegildo Claudio que atendiese á ese trabajo, y que entonces oyó que uno de sus compañeros gritó: "Lo mata." Que el Administrador, Don Antonio González, es quien dá todas las órdenes; que en la noche cuando el demandante fué lesionado por la máquina, no había nadie á cargo de la misma; que él había visto funcionar la máquina á cargo del maquinista, y sin maquinista; y él expresó la opinión de que si un maquinista hubiese estado á cargo de la máquina amasadora no hubiese ocurrido la desgracia á dicho Claudio; que dicha máquina hubiera podido pararse inmediatamente si hubiera habido un maquinista á cargo de ella. A preguntas hechas por la defensa, dicho testigo declaró que era necesario para Claudio, meter la mano en donde estaba la masa, para sacarla; que él tenía que usar la mano izquierda para sacar la masa, y la derecha para manejar la manigueta; que había, junto á la máquina, dos hombres, siendo uno de ellos José Dávila, y el otro, Hermenegildo Claudio; que era necesario para Claudio meter la mano dentro de la máquina para sacar la masa.

El testigo Jacinto Verdejo, vecino de Puerta de Tierra, y panadero de oficio, y que estaba en el empleo de la sociedad demandada, en la noche en que le ocurrió la desgracia á Hermenegildo Claudio, declaró que él presenció el accidente; que él ha trabajado en la panadería tres ó

cuatro años, pero que nunca trabajó en la máquina; que solía haber un maquinista á cargo de la máquina; pero que éste había sido despedido al instalarse el motor eléctrico en lugar de la máquina de vapor; que oyó el grito del hombre lesionado, y que corrió hacia él, encontrándose con que tenía el brazo partido; que la máquina puede pararse instantáneamente, y que ésta se mueve con gran fuerza y velocidad, y que después de haberse cortado la fuerza motriz, un cuerpo duro puede parar su movimiento.

La parte demandada propuso como prueba, que por el Juez se hiciera una inspección ocular de la máquina de que se ha hecho mención. La Corte se trasladó al establecimiento de la panadería "La Unión". Se ha levantado la siguiente acta, como resultado de la inspección.

"*Juez.*—Hoy día 14 de Octubre de 1904, con objeto de practicar una investigación ocular, se constituyó la Corte en la casa número 15 de la calle de la Luna. En una de sus dependencias se encontró una máquina, hallándose allí también presente el Sr. José Portilla, experto maquinista, propuesto como tal por el demandado, para hacer la descripción de la máquina en cuestión, y se le tomó juramento y comenzó su descripción que la hizo de la siguiente manera:

*Juez.*—¿Qué es esto?

*Perito.*—Esto es una máquina amasadora de pan.

*Juez.*—¿Tiene patente? ¿Qué sistema es?

*Perito.*—No tiene la marca del fabricante. Es una máquina de cuatro brazos que se encuentran dentro de un receptor dentro del cual se coloca la masa al efecto. Para amasarla, se ponen en movimiento, tal como están ahora, los cuatro brazos, dos de cada lado, que están dentro de dicho receptor. Una vez que la masa está terminada, se cambian los brazos, se ponen los dos en el mismo sentido para que bote la masa. Que los brazos, durante el tiempo que dura la preparación de la masa, funcionan en movimiento contrario y se colocan por medio de una rueda ó manigueta al lado en el mismo movimiento, con objeto de que boten la masa hacia afuera. También por medio de una manigueta colocada al lado derecho, el receptor todo gira hacia afuera con objeto de botar la masa. Que en

el momento de sacar la masa no se puede atender á los demás movimientos de la máquina.

*Juez.*—¿Cómo se imprime el movimiento general?

*Perito.*—El movimiento general es por medio de electricidad, constituyendo un aparato aparte. Corriendo el motor del aparato eléctrico, queda abierta la corriente y la máquina puesta en movimiento general. Para imprimir el movimiento de los cuatro brazos que están dentro de la masadora, se hace girar una rueda que se encuentra colocada á la derecha de dicha masadora, poniéndose frente á la misma y á una distancia, formando un ángulo recto, teniendo cada uno de los lados tres piés. Distancias tomadas del borde extremo derecho de la masadora y el borde exterior de la rueda. Hay además para que cambie los brazos de la masadora, una palanca articulada á una distancia de 18 pulgadas del borde extremo derecho de la masadora. Igual hay otro en el lado izquierdo. El movimiento general se pára aislando la corriente eléctrica por medio del manipulador. El movimiento de los brazos de la masadora se pára instantáneamente por medio de una maniqueta de fricción, que está colocada á la misma distancia de un ángulo de tres pies. Colocada la masa en la máquina, se imprime un movimiento invertido de los brazos de cada lado y así se deja hasta que adquiere la debida consistencia. · Para sacar la masa de la masadora, se hacen girar primeramente la masadora ó depósito, colocándose en el suelo una arteza, y hecho esto, se hace el cambio de movimiento de dos de los brazos de modo que los cuatro giren en el mismo sentido, y entonces va cayendo la masa de la masadora á la arteza. Durante esta operación, el mayor volúmen de la masa se vierte por el movimiento de los brazos de la masadora, estando el operario á la vista del trabajo. Para extraer los restos que quedan en los brazos, el operario deja parar la máquina y de esta manera extraerla entonces. Según mi opinión, no puede ninguna persona ser cogida por los brazos de la máquina cuando éstos se encuentran funcionando en la misma dirección, sino en dirección invertida.

*Juez.*—Hallándose presente allí Hermenegildo Claudio, y poniéndose frente á la masadora, en la misma situación en que se encontraba cuando perdió el brazo, explicó el hecho de la manera siguiente:

Que la máquina estaba en movimiento, yendo los brazos de la masadora funcionando en sentido contrario. Que él ocupaba su mano derecha en virar la masadora, con objeto de parar los brazos para sacar la masa última que quedaba, y al ir á parar, cuando se vino á

dar cuenta, tenía la mano izquierda cojida. Tenía la mano cojida que había á la vez empleado en ir extrayendo la masa. Que entonces soltó la mano derecha de donde la tenía y la apoyó en uno de los bordes de la masadora y se aguantó así hasta que le rompió la mano. Ahí no sabe dar cuenta porque ya no tenía juicio.

*Juez.*—Las partes manifestaron que no tenían más nada que preguntar."

Fundándose en este estado de hechos, el Tribunal con fecha 14 de Octubre, dictó sentencia á favor del demandante, por la suma de ($400) cuatrocientos dollars y todas las costas del pleito, contra cuya sentencia, la parte demandada interpuso oportunamente recurso de apelación para ante este Tribunal. El escrito de apelación fué presentado ante este Tribunal en 7 de Noviembre de 1904, y la vista se efectuó el día 7 de Febrero del año siguiente.

Las disposiciones legales aplicables á esta causa con motivo de los hechos relatados en la misma, pueden resumirse como sigue:

La responsabilidad de los patronos de lesiones sufridas por sus empleados mientras éstos se hallan á su servicio, se regula en Puerto Rico por el estatuto. Esta Ley fué aprobada en 1o. de Marzo de 1902. (Est. Revis. de Puerto Rico, Secciones 322 á 333, págs. 162 á 167.)

Un empleado, que esté ejercitando en su ocupación, el debido cuidado y diligencia al recibir la lesión corporal, tendrá derecho á entablar una demanda de indemnización por causa de

1o.—Defectos en el estado de máquinas, etc.

2o.—Negligencia del Administrador.

3o.—Negligencia de un guarda-agujas, conductor de locomotoras, ó conductor de trenes, en un ferrocarril.

(Véase la Sección 322, págs. 162 y 163, Est. Revis. de Puerto Rico).

Al calcular el importe de la indemnización, los Tribu-

nales tienen que tomar en consideración los puntos siguientes:

1o.—El grado de culpabilidad del patrono ó del administrador.

2o.—Las cantidades gastadas por el empleado en

(a)   Asistencia médica.

(b)   Drogas, medicinas y otros gastos necesarios.

3o.—La pérdida del salario durante el tiempo que dure la curación.

4o.—Inhabilitación permanente para ganar dinero.

5o.—Inhabilitación temporal para ganar dinero.

(Véase la Sección 323, págs. 163 y 164, Est. Revis. de Puerto Rico).

La indemnización que por daños y perjuicios pueda reclamar el empleado, está limitada á dos mil dollars.

(Sección 323, págs. 163 Est. Revis. de Puerto Rico.)

También se ha dispuesto que no podrá reclamarse indemnización alguna por lesiones corporales sufridas por causas de defectos en el estado de maquinarias, ó por causa de negligencia del patrono ó del administrador, en el caso de que el empleado hubiese estado enterado del defecto ó del descuido que causó el accidente si no ha dado aviso al patrono ó al administrador.

(Sección 329, págs. 166 y 167, Est. Revis. de Puerto Rico).

También se ha dispuesto que esta Ley no será aplicable á los casos de lesiones corporales causadas á sirvientes domésticos ó labradores, por sus camaradas.

(Sección 321, página 167, Est. Revis. de Puerto Rico.)

Estas disposiciones de la Ley de esta Isla, están de acuerdo con la doctrina legal general sentada por las decisiones de los Tribunales americanos, cuyas decisiones se examinarán para aclarar y hacer patente los principios consignados en la presente causa.

Véase "Cooley on Torts", Capítulos XVIII y XXI, páginas 622, 634, 667, 791, 793, 797, 804, 810, 812 y 816,

para una discusión de los principios en que está basado el Estatuto de Puerto Rico.

La primera cuestión que puede considerarse con relación á este asunto, es con respecto á los riesgos que asume un empleado al hacerse cargo de su empleo. En el caso de un empleado, cuya ocupación ordinaria y usual es la de manejar maquinarias ó algún instrumento ó herramienta relacionada con las mismas, y de cuyo empleado se demuestra que tuvo conocimiento del modo de funcionar de dichas maquinarias, y de sus peligros y defectos, la regla sancionada por una larga serie de autoridades es, sin duda alguna, la de que el empleado asume los usuales peligros y riesgos incidentales á su empleo, y que si resulta lesionado en el curso del mismo, no puede reclamar compensación de su patrono. (*Tuttle* v. *Detroit, G. H. & M. Ry. Co.* 122 U. S. 195 & 196; *Foley* v. *California Horse-shoe Company,* 115 California 190; *District of Columbia* v. *Mac Elligott,* 117 U. S. 633.)

Las pruebas presentadas en esta causa, demuestran que el demandante Claudio había sido empleado en la panadería de dicha sociedad por más de nueve años, y que era su deber atender, en unión de otro empleado, al funcionamiento de una máquina amasadora; que algún tiempo antes del accidente (las pruebas no demuestran qué tiempo) se había efectuado un cambio en la fuerza motriz, empleándose un motor eléctrico en vez de una máquina de vapor, y que al mismo tiempo, ó poco después, José Negrón, el maquinista encargado de la máquina de vapor, había sido despedido por no considerarse necesario el empleo de un maquinista encargado del motor eléctrico. También aparece que el demandante Claudio se quejó al gerente Cortínez, manifestándole que el día menos pensado ocurriría una desgracia y Cortínez le contestó que eso no era nada, es decir, que la máquina era muy sencilla y que cualquiera podía entenderla; que Claudio después dijo lo mismo á sus compañeros; pero que nada se hizo en el asunto.

Sin embargo, el demandante continuó al servicio de la sociedad, desempeñando sus deberes, como de costumbre, y en unión de José Gavino Dávila, atendió á la máquina amasadora hasta el día del accidente; las fechas no se han fijado definitivamente por las declaraciones.

Bajo estas circunstancias, y en vista del principio legal aplicable á este caso, debe entenderse que el demandante asumió los riesgos que naturalmente correría por el uso y manejo de la máquina amasadora, después de haberse cambiado la fuerza motriz de vapor por la de electricidad, y de haberse despedido al maquinista encargado de dicha máquina. Si no tuvo la intención de asumir tales riesgos, era su deber, al quejarse del peligro y ver que su queja fué desatendida por las autoridades de la sociedad, retirarse entonces del servicio de la misma. Por el hecho de que continuó en su empleo, asintió táxitamente á la decisión del administrador de que era innecesario un maquinista, y que cualquiera podía atender al motor; y por ello asumió todos los riesgos que acarreaba esta disposición con respecto á los deberes de los empleados.

En apoyo de esta proposición, pueden citarse las siguientes decisiones de los diferentes Tribunales:

*District of Columbia* v. *Mc Elligott,* 117 U. S. 633.
*Bunt* v. *Sierra Butte Gold Mining Co.* 138 U. S. 483.
*Patton* v. *Tex. & Pac. Ry Co.,* 179, U. S. 663, 664.
*Washington & Georgetown R. R. Co.* v. *Mc Dade,* 135, U. S. 570.

En el presente caso, el demandante tuvo conocimiento del uso del motor eléctrico, y de la ausencia del maquinista, y del hecho de que él tendría que echar á andar y parar á dicho motor y al mismo tiempo manejar y proveer la máquina amasadora. El mismo declara que lo consideró peligroso, y que le llamó la atención al Gerente acerca de este particular, quien dijo que no había peligro, y por el hecho de que continuó en el servicio, cumpliendo con los deberes que consideraba peligrosos, debe entenderse que él

asumió todos los riesgos incidentales á dicho empleo. Aceptando los riesgos de tal situación peligrosa no puede reclamar indemnización por una lesión que resulte de la misma. (*Chicago Mil. & St. Paul Ry Co.* v. *Ross* 112, U. S. 382, 383; *Kohn* v. *Mc Nulta,* 147 U. S. 238.)

Pero aparte de esta fase del caso que se halla en deliberación conviene llamar la atención sobre el hecho de que la ley, por la cual se define la responsabilidad de los patronos, en cuanto á las lesiones corporales sufridas por sus empleados, cuya ley está vigente en Puerto Rico desde el 1o. de Marzo de 1902, sólo concede acción á los empleados que al tiempo de recibir la lesión corporal, estén ejercitando el debido cuidado y diligencia en su ocupación. En otras palabras, si el mismo demandante en el desempeño de sus deberes y en el manejo de la maquinaria, en cuyo manejo se hallaba ocupado, era culpable de negligencia ó descuido contribuyendo así al riesgo, y si tal descuido era una de las causas probables del accidente por el cual resultó lesionado, no puede reclamar de su patrono indemnización alguna por daños y perjuicios. Es cosa bien determinada, tanto con arreglo á nuestra ley, cuanto con arreglo á los principios legales generales sentados en las decisiones de los Tribunales, que negligencia por parte del demandante, cuya negligencia haya contribuido al riesgo, en los casos en que, mediante el ejercicio del cuidado necesario, hubiera podido evitarse la lesión, tal negligencia impide que el demandante reclame indemnización por daños y perjuicios. Si hubiere varios métodos, ó más que uno, para el desempeño del deber, y siendo algunos de ellos seguros y otros nó, y si el empleado escogiera de entre ellos, un método que innecesariamente le expusiera á un peligro, entonces él asume el riesgo de su elección, aunque otros hayan hecho lo mismo. (*Southern Pac. Co.* v. *Seley,* 152 U. S. 156; *Kroy* v. *Chicago R. D. & P. R. Company,* 37 Ia. 357; *Chicago & N. W. R. R. Co.* v. *Bliss,* 6, Ill. 41).

Pero cuando un demandante pueda demostrar que no es culpable de ningún descuido que haya podido contribuir al riesgo, y que aunque haya asumido el riesgo de la maquinaria peligrosa, ha procedido en la forma que lo haría una persona prudente, en tales circunstancias, es necesario que demuestre, además, por medio de pruebas, que su patrono ha sido culpable de alguna negligencia ó quebrantamiento de deber, ya procediendo en persona ó ya por conducto de agente, administrador ó sobrestante, que representen á dicho patrono.

La negligencia del patrono en el presente caso, parece que consiste, según se alega en la demanda, en que dejó de emplear un maquinista para manejar el motor eléctrico, é impuso ese deber á los panaderos, quienes al mismo tiempo estaban á cargo de la máquina amasadora. Es cosa bien determinada que cuando se alega, como base de la reclamación del demandante, negligencia del patrono por haber dejado de emplear sirvientes competentes ó un personal adecuado para manejar su negocio, estos hechos deben ser claramente alegados en su demanda, y al demandante le incumbe demostrar que sus alegaciones de negligencia por parte del demandado, quedan establecidas por medio de pruebas; así como refutar el que haya habido por su parte un descuido que haya contribuido al riesgo. En apoyo de esta proposición, pueden citarse las causas siguientes:

*Hough* v. *Texas & Pacific R. R. Co.,* 100 U. S. 213.
*B. & O. R. R. Co.* v. *Whittington's Adm'r.* 30 Gratt. 805.
*Central A. & B. Co.* v. *Saers,* 59 Ga. 436.
*Ga. W. & B. Co.* v. *Kenny,* 58 Ga. 485.
*Central R. & B. Co.,* v. *Kelley,* 58 Ga. 107.
*Mad River R. R. Co.* v. *Barber,* 5 Ohio St. 541-568.
*Ill. Central R. R. Co.* v. *Koup,* 32 Ill. 235.
*May* v. *Ill. Central Co.,* 40 Ia. 341.
*Blake* v. *Me. Central R. R. Co.,* 70 Me. 60.

Ciertamente, el patrono está obligado á ejercer el debi-

do cuidado, no solamente suministrando la maquinaria que sea procedente, sino también un número suficiente de empleados competentes para manejar la misma sin peligro; sin embargo, en el caso de que se emplease un personal insuficiente, y que el patrono se negase á aumentar el número de los operarios, el empleado que continúa en su cargo, con conocimiento de tal insuficiencia acepta el riesgo que se origine de tal insuficiencia.

Según todas las reglas de procedimiento, en cualquier Tribunal bajo los sistemas español y americano, el demandante tiene la obligación de presentar pruebas, y él debe probar sus alegaciones á satisfacción del Tribunal ó del Jurado, según sea el caso; y dejando de hacerlo, no puede esperar sentencia á su favor. (*Patton* v. *Texas & Pac. R. R. Co.* 179 U. S. 663.)

Por consiguiente, mirando este caso bajo cualquier punto de vista, y dándole al demandante todo el beneficio de todas la alegaciones hechas en su demanda, y de todas las pruebas presentadas en el acto de la vista de la causa ante el Tribunal de Distrito, no aparece que tenga derecho á reclamar del demandado indemnización alguna por daños y perjuicios.

Por estas razones, debe revocarse la sentencia del Tribunal de Distrito, y dictarse por este Tribunal otra á favor del apelante, de acuerdo con los principios legales enunciados con este dictámen.

*Revocada.*

Jueces concurrentes: Sres. Presidente Quiñones y Asociados, Hernández, Figueras y Wolf.